PEOPLE v PERRY

Docket No. 107621. Argued December 10, 1998 (Calendar No. 1). Decided
    June 15, 1999.

Michael L. Perry was convicted in the Saginaw Circuit Court, Leopold
    P. Borrello, J., of first-degree murder, attempted murder, and arson.
    The trial court had instructed the jury on the elements of the
    charged offenses and the lesser offenses of second-degree murder
    and involuntary manslaughter, but refused a defense request for an
    instruction on being an accessory after the fact. The Court of
    Appeals, J. M. BATZER, J. (O'CONNELL, P.J., concurring, and BANDSTRA,
    J., concurring in part and dissenting in part), affirmed. 218 Mich
    App 520 (1996) (Docket No. 143422). The defendant appeals, lim-
    ited to the issue whether the circuit court erred in denying the
    defense request for an instruction on accessory after the fact as a
    cognate lesser offense of murder.

    In an opinion per curiam, signed by Chief Justice WEAVER, and
Justices TAYLOR, CORRIGAN, and YOUNG, the Supreme Court *held*:

    The common-law offense of accessory after the fact is not a cog-
nate offense of murder; the circuit court did not err in refusing to
so instruct.

    1. Cognate lesser included offenses share some common ele-
ments, and are of the same class or category as the greater offense,
but have some additional elements not found in the greater offense.
They are of the same class or category as, or closely related to, the
originally charged offense, so as to provide fair notice to the
defendant that he will be required to defend against them.

    2. The common-law offense of accessory after the fact is not in
the same class or category as murder. The purpose of the murder
statute is to protect human life and prohibit wrongful slayings. By
contrast, an accessory after the fact is a person who, with knowl-
edge of another's guilt, renders assistance in an effort to hinder
detection, arrest, trial, or punishment. While a jury is free to
believe or disbelieve, in whole or in part, any of the evidence
presented, evidentiary support for a cognate instruction alone is
insufficient to require that the instruction be given. Although had
the defendant in this case originally been charged as an accessory
after the fact, and the evidence adduced at trial clearly would have

supported a guilty verdict with regard to that charge, it does not follow that the defendant was entitled to the requested instruction regarding accessory after the fact.

Affirmed.

Justice BRICKLEY, joined by Justices CAVANAGH and KELLY, dissenting, stated that recent interpretations of the cognate lesser offense doctrine have transformed it from a rule protecting the defendant's notice rights, into a formalistic bar serving no purpose but to limit a criminal defendant's ability to require trial judges to give lesser offense instructions. A proper rule would permit the defendant to demand, and require the trial judge to give, a jury instruction on a cognate lesser offense where a reasonable view of the evidence would support the jury in finding the defendant guilty of the lesser offense. The current rule distorts the jury's fact-finding role, potentially depriving it of the ability to reach a true verdict.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael D. Thomas*, Prosecuting Attorney, and *J. Thomas Horiszny*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan M. Meinberg*) for the defendant-appellant.

Amicus Curiae:

*Norm Donker*, President, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

PER CURIAM. Defendant was convicted of first-degree murder and several other offenses. At trial, his attorney requested that the jury be instructed on the common-law offense of accessory after the fact, but the circuit court refused to give the instruction. The Court of Appeals affirmed. We hold that the common-law offense of accessory after the fact is not a cognate offense of murder, and we likewise affirm.

I

The crime occurred on June 14, 1990. Shortly before dawn, two Molotov cocktails were thrown through the living room windows of the Saginaw home of a family named Rollie. Flames and smoke soon engulfed the house, and three young children died in the fire. The parents and one child survived.

A thirteen-year-old juvenile named Jacinto (Jason) Ricco was involved in starting the fire. He had a history of taunting and threatening members of the Rollie family. In August 1989, he had stood in the street outside their house, yelling invective that included specific mention of a firebomb. Further, Ricco had an interest in such devices and acknowledged being in the vicinity of the Rollie house, with the two Molotov cocktails, at the time of the fire.[1]

Sixteen-year-old defendant Michael L. Perry was in the company of Ricco and several friends at the Ricco house through the night of June 13-14. Around the time of the fire, defendant and Ricco left. When they returned, they were panting as though they had been running. They were arguing about the fire. Ricco later testified that defendant threw the devices into the Rollie home, using a towel to keep fingerprints off the bottles.[2] A second witness told the police that defendant had made such an admission after he and Ricco returned, but the witness' testimony at trial was

---

[1] Ricco was tried as a juvenile and adjudicated guilty of arson, not of murder.

[2] Ricco said that he did not actually see Mr. Perry throw the devices— he said he turned and ran as Mr. Perry was preparing to throw them, and then heard "two wooshes or something, like you could tell something was exploding, kind of lighting on fire like something like that."

inconsistent regarding whether he heard an admission from defendant or an accusation from Ricco.

After the fire, defendant and Ricco were in a bathroom of the Ricco house, where they were heard arguing. The toilet flushed several times. A swab taken inside the toilet bowl later revealed traces of the same type of fuel as the accelerant used to start the fire. Defendant was also part of a discussion concerning disposal of the container in which the fuel had been stored. Later, defendant and Ricco were seen near the burning house, watching the fire.[3]

Defendant was charged as an adult[4] with three counts of first-degree (felony) murder for killing three children in the Rollie family,[5] one count of burning a dwelling house (arson),[6] and three counts of attempting to murder the three surviving members of the Rollie family.[7] Following a mistrial, defendant was tried again in February 1991.

Defendant did not testify or offer any proofs. His attorney argued to the jury that defendant was not guilty. "We're denying any involvement in it period, paragraph." Counsel also argued that later events could not constitute aiding and abetting the crime:

---

[3] These portions of the testimonial record are cited as evidence that defendant was an accessory after the fact. For the same purpose, we are asked to note evidence that defendant may have helped to detain one of the other witnesses who wanted to call the fire department. With children dying in a fire, however, steps to slow or prevent the arrival of fire fighters could properly be treated as acts in the commission of murder, rather than assistance after the fact. Further, the act of flushing the accelerant down the toilet after the bombing could also be construed as an act committed in furtherance of the charged offenses.

[4] MCL 600.606; MSA 27A.606.

[5] MCL 750.316; MSA 28.548.

[6] MCL 750.72; MSA 28.267.

[7] MCL 750.91; MSA 28.286.

> Members of the jury, when the Court instructs you on the aiding and abetting instruction that the prosecutor referred to, one of the elements of aiding and abetting is that any participation has to be done with the intent to commit the crime before or during the commission of the crime, or participation with knowledge that the other person has an intent to commit a certain act, a certain offense. So that what happens afterwards not—does not constitute aiding and abetting after the crime is complete. So that the—it's basically irrelevant at this point what happened in the bathroom anyway, but I'm—I don't think you can accept beyond a reasonable doubt [another witness'] testimony that it was—one of the voices she heard was Mr. Perry, under the circumstances as they existed at that time.

The court instructed the jury on the elements of the charged offenses, and on the lesser offenses of second-degree murder[8] and involuntary (gross negligence) manslaughter.[9] The court told the jury that it could find defendant guilty if he aided another in the commission of the crime.[10] However, the court refused defense counsel's request for an instruction on the common-law offense[11] of being an accessory after the fact.[12]

After a statutory hearing,[13] the circuit court sen-

---

[8] MCL 750.317; MSA 28.549.

[9] MCL 750.321; MSA 28.553.

[10] In this regard, the court gave the instruction found in CJI2d 16.4(7), as well as the broader language of CJI2d 8.1.

[11] MCL 750.505; MSA 28.773.

[12] CJI2d 8.6 is the standard instruction on the offense of accessory after the fact. CJI2d 8.7 explains how aiding and abetting differs from being an accessory after the fact.

[13] MCL 769.1(3); MSA 28.1072(3). See MCR 6.931. Such a hearing is now inapplicable for the offenses committed in the present case. MCL 769.1(1); MSA 28.1072(1), as amended by 1996 PA 248.

tenced defendant as an adult,[14] imposing life terms for
murder[15] and ten- to twenty-year sentences for
attempted murder.[16]

The Court of Appeals affirmed. 218 Mich App 520;
554 NW2d 362 (1996). In his lead opinion, Judge
BATZER, sitting by assignment, upheld the circuit
court's conclusion that accessory after the fact is not
a proper cognate offense of murder. Judge O'CONNELL
wrote a short concurrence, in which he expressed
agreement with the lead opinion. Judge BANDSTRA dis-
sented, saying that defendant should be given a new
trial, at which the jury would be instructed on acces-
sory after the fact.

Defendant's application for leave to appeal was
granted, limited to whether the circuit court erred in
denying the defense request for an instruction on
accessory after the fact as a cognate lesser offense of
murder. 457 Mich 870 (1998).

II

In recent years, this Court has considered the topic
of lesser offenses on several occasions. Comprehen-
sive discussions are found in *People v Hendricks*, 446
Mich 435, 441-451; 521 NW2d 546 (1994),  and *People
v Bailey*, 451 Mich 657, 667-676; 549 NW2d 325 (1996).

---

[14] This was a difficult decision—the court expressly found that neither
sentencing alternative (a juvenile disposition or concurrent nonparolable
life terms) was just.

[15] Defendant was not sentenced for the arson conviction, since it was
the felony underlying the murders. *People v Wilder*, 411 Mich 328; 308
NW2d 112 (1981).

[16] The circuit court's judgment of sentence includes a recommendation
that future Governors consider the defendant for commutation after he
has served twenty years.

It is not necessary again to set forth at length the principles outlined in *Hendricks* and *Bailey*. However, we reaffirm our statement in *Hendricks* that " '[c]ognate' lesser included offenses are those that share some common elements, and are of the same class or category as the greater offense, but have some additional elements not found in the greater offense."[17] 446 Mich 443. Applying those guides, we concluded in *Hendricks* that UDAA[18] is not a cognate offense of armed robbery.

> This analysis leads to the conclusion that UDAA and armed robbery are not of the same class or category, and that UDAA is not a possible cognate offense where the primary offense charged is armed robbery. UDAA, while a property offense, lies within a hierarchy in line with, but below, the outer reaches of larceny. While bearing some relationship to theft, it requires no larcenous intent. Armed robbery also bears some secondary relationship to larceny, but is principally directed at protection of the person. That crime evinces a primary concern for the threat to the safety of the individual inherent in the manner chosen by the perpetrator to accomplish his larcenous end. Whatever distant association the two offenses may have through their relationship to lar-

---

[17] This principle is traceable, as noted by the dissent, to *People v Ora Jones*, 395 Mich 379; 236 NW2d 461 (1975). The dissent would overrule this part of the *Jones* case. We note that after oral argument we asked the parties to brief whether we should abandon our current approach to lesser offense instructions. The prosecution has urged us to abandon our current approach in favor of the federal model that does not allow cognate lesser instructions. The California Supreme Court took such a course of action in *People v Birks*, 19 Cal 4th 108; 960 P2d 1073 (1998). Although several arguments in favor of adopting the federal model are attractive, we hold that this is not the case for such a change, largely because defendant was not entitled to an accessory after the fact instruction under our existing cognate lesser jurisprudence. We do, however, notify bench and bar that we are prepared in a more appropriate case to consider adopting the federal model regarding lesser offense instructions.

[18] MCL 750.413; MSA 28.645.

ceny is simply too tenuous to allow us to conclude that UDAA and armed robbery are of the same class or character as required for cognate offense instruction. [446 Mich 450-451.]

In light of that analysis, it inevitably follows that the common-law offense of accessory after the fact is not in the same class or category as murder. Plainly, the purpose of the murder statute is to protect human life and prohibit wrongful slayings. By contrast, an accessory after the fact is "one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment." Perkins, Criminal Law (2d ed), p 667, quoted in *People v Lucas*, 402 Mich 302, 304; 262 NW2d 662 (1978). The crime of accessory after the fact is akin to obstruction of justice. *United States v Brenson*, 104 F3d 1267 (CA 11, 1997). Laws forbidding the obstruction of justice clearly serve a different purpose than those that forbid the taking of a life.

As indicated, a comparison with *Hendricks* is instructive. In that case, the question was whether UDAA was a cognate offense of armed robbery in a case in which the defendant drove away in the victim's automobile and later testified that he had not intended to deprive her of the vehicle permanently. Here, in contrast, the charged offense involved a murderous arson accomplished by throwing Molotov cocktails into a home where a family slept, while the putative offense of accessory after the fact took place shortly afterward, at another site, for another purpose. UDAA not being a cognate offense of armed rob-

bery, certainly the common-law offense of accessory after the fact is not a cognate offense of murder.[19]

III

Writing in dissent, Judge BANDSTRA focused on the evidentiary support in this record for the conclusion that defendant was, indeed, an accessory after the fact. In this vein, he correctly noted that a jury is free to believe or disbelieve, in whole or in part, any of the evidence presented. *People v Fuller*, 395 Mich 451, 453; 236 NW2d 58 (1975). However, evidentiary support for a cognate instruction is not alone sufficient to require that the instruction be given. As explained in *Hendricks* and *Bailey*, the putative cognate offense also must be of the same class or category.[20] Thus, while Judge BANDSTRA is correct that "[i]f defendant

---

[19] A court's authority to instruct on lesser offenses flows from MCL 768.32; MSA 28.1055 and the interest of both defendants and prosecutors in seeing that juries do not return unjust verdicts when faced with all-or-nothing choices. However, a tension sometimes exists between this shared interest and the rights of the parties. Specifically, the defendant has a right to notice of the charge, while the prosecutor has the right to select the charge and avoid verdicts on extraneous lesser offenses preferred by the defendant. In the present case, the defendant's actions at the Ricco home, where he apparently sought to hide evidence of the crime, are closely enough related to the crime of setting the fire that the prosecutor could have chosen to file an eighth count in the information, charging the defendant as an accessory after the fact. The prosecutor, however, did not choose that course, and defendant does not have the right to interpose that alternative charge. Put another way, the request for an instruction on accessory after the fact was in the nature of a motion to amend the information, *People v Williams*, 412 Mich 711, 714; 316 NW2d 717 (1982), the denial of which was not an abuse of discretion.

[20] In this regard, Judge BANDSTRA does not focus on a comparison between murder and the common-law offense of being an accessory after the fact. Rather he notes a similarity between the latter offense and the act of being an accessory to a crime. 218 Mich App 547, n 1. However, being an aider and abettor is simply a theory of prosecution, not a separate substantive offense. MCL 767.39; MSA 28.979.

had been originally charged as an accessory after the fact in this case, the evidence adduced at trial would clearly have supported a guilty verdict with regard to that charge," it does not follow that "[d]efendant was entitled to the requested instruction regarding accessory after the fact, and the trial court erred in failing to grant that request." 218 Mich App 551-552.

Several decisions of the Court of Appeals also have been urged upon us, as examples of sound analysis in this realm. These include *People v Rohn*, 98 Mich App 593, 602; 296 NW2d 315 (1980), *People v Usher*, 196 Mich App 228, 231-234; 492 NW2d 786 (1992), *People v Kurzawa*, 202 Mich App 462; 509 NW2d 816 (1993), and *People v Cadle*, 204 Mich App 646, 657; 516 NW2d 520 (1994).[21] However, *Rohn* and *Cadle* are instances in which a court looked only at whether the evidence showed that the defendant had committed the cognate offense, omitting to consider whether it was of the same class or category as the offense charged. As indicated above, both analytical steps are necessary. In *Usher*, the defendant proposed that accessory after the fact was a cognate offense of murder; yet when the trial court agreed and the defendant was so convicted, he argued on appeal that it was not a cognate offense. The panel in *Kurzawa* did not face the issue we consider today. To the extent that these decisions

---

[21] The circuit court relied on *People v Karst*, 118 Mich App 34; 324 NW2d 526 (1982), to dispose of this matter. The Court of Appeals unanimously agreed that *Karst* was inapposite. 218 Mich App 532, n 1, 546-547. However, the analysis of the *Karst* panel is helpful in distinguishing aiding and abetting from accessory after the fact, and emphasizing that the latter offense needs to be separately charged, if it is to be placed before the jury. 118 Mich App 41.

are inconsistent with our holding today, they are overruled.[22]

Finally, we reject defendant's claim that he was denied due process of law because the circuit court would not give an instruction that accorded with his theory of the case. As noted on page 58, the defense was simply that he was innocent of the charges laid by the prosecutor; nothing prevented defendant from urging that defense. Cf. *Chambers v Mississippi*, 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973), *Davis v Alaska*, 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974). Defense counsel diligently cross-examined the prosecution witnesses, and, though he declined the opportunity, defendant likewise was free to present proofs to the jury. The only limitation placed on defendant was that he was not permitted to select an alternative charge, of a different class or category, to present to the jury. That choice lay with the prosecu-

---

[22] We also need to address our treatment of a murder case called *People v Rodgers*, unpublished opinion per curiam, issued May 23, 1995 (Docket No. 163255), in which the Court of Appeals reversed on the ground that the trial court erred in refusing the defendant's request for an instruction on accessory after the fact. In its opinion, the Court of Appeals said that the evidence supported such an instruction, and that the failure to instruct was not harmless error. The panel did not write of the relationship between the charges in the information and the offense of being an accessory after the fact. Initially, we denied leave to appeal by a four-three vote. *People v Rodgers*, 451 Mich 894 (1996). In dissent, Justice BOYLE raised the issue whether accessory after the fact is indeed a cognate offense. 451 Mich 895. On reconsideration, we remanded *Rodgers* to the Court of Appeals for reconsideration in light of *People v Mateo*, 453 Mich 203; 551 NW2d 891 (1996), which concerns the test for determining whether preserved nonconstitutional error is harmless. *People v Rodgers*, 453 Mich 883 (1996). After the remand, we reversed on the ground that any error was harmless. *People v Rodgers*, 455 Mich 868 (1997). While our third order refers to "the lesser offense of accessory after the fact," that reference was dictum. Because it is inconsistent with today's opinion, it is rejected.

tor, subject to the circuit court's right to amend the information sua sponte or on proper motion.

IV

For the reasons set forth in this opinion, we hold that the common-law offense of accessory after the fact is not a cognate offense of murder, and that the circuit court did not err in refusing to give such a cognate instruction to the jury.[23] Accordingly, we affirm the judgments of the circuit court and the Court of Appeals.

WEAVER, C.J., and TAYLOR, CORRIGAN, and YOUNG, JJ., concurred.

BRICKLEY, J. (*dissenting*). The majority decides this case under an arbitrary rule that severely limits the ability of this state's criminal juries to find the truth. The evidence in this case was subject to three reasonable interpretations: that the defendant was guilty of the charged offense, that he was not guilty of the charged offense, or that he was not guilty of the charged offense, but guilty of the common-law crime of accessory after the fact. The trial court's failure to give an instruction on the cognate lesser offense of accessory after the fact deprived the jury of the ability to agree with one of these interpretations, potentially foreclosing its ability to render a true verdict. Because I believe that there are neither sound rea-

---

[23] In light of our conclusion that the circuit court did not err, we need not consider whether an instruction error in this case could be characterized as harmless. Specifically, we need not address Judge BANDSTRA's treatment of *People v Richardson*, 409 Mich 126; 293 NW2d 332 (1980), and *People v Beach*, 429 Mich 450; 418 NW2d 861 (1988). See 218 Mich App 552-556.

sons nor sound reasoning behind the Court's decision today, I dissent.

I

A trial judge need not instruct the jury on a cognate lesser offense unless that lesser offense is of the same "class or category" as the charged offense. *People v Bailey*, 451 Mich 657, 668; 549 NW2d 325 (1996). This rule, which the majority relies upon in the instant case, is based on the defendant's due process right to have notice of the charges against him before he can be convicted of them. US Const, Ams VI, XIV; Const 1963, art 1, § 20. While this state's cognate lesser offense doctrine has its origin in this concern for the defendant's due process rights, it has been inexplicably extended to those cases in which the defendant requests the instruction in question, thus waiving his right to notice. *People v Ora Jones*, 395 Mich 379, 387; 236 NW2d 461 (1975).

Our recent interpretations of the cognate lesser offense doctrine have transformed it from a rule protecting the defendant's notice rights, into a formalistic bar serving no purpose but to limit a criminal defendant's ability to require trial judges to give lesser offense instructions. Today's holding is the latest of these decisions, unmoored from the principles that underlie it. I dissent, and propose that we make this rule of law responsive to the purposes for which it exists.

A

This Court's decision in *Ora Jones* is the origin of our modern lesser offense jurisprudence. *Ora Jones*

cognate lesser offense analysis is fundamentally flawed, however, because it is based on the erroneous premise that a criminal defendant may not be convicted of an uncharged lesser offense, even though the defendant has requested instruction on that offense.

> It is elementary that a defendant may not be convicted of a crime with which he was not charged. . . . The reason is apparent: The Sixth and Fourteenth Amendments give a defendant the right to know the nature and cause of the accusation against him.

> Thus, while there is comparatively little difficulty with the necessarily included lesser offenses, the cognate lesser included offenses are somewhat more difficult to ascertain, conceptually as well as practically. One guide to the minimal due process notice requirements in this area was set out in *Paterno v Lyons*, 334 US 314; 68 S Ct 1044; 92 L Ed 1409 (1948), wherein the [United States Supreme] Court said that due process notice requirements are met if the greater charged crime and the lesser included offense are of the same or of an overlapping nature. [*Id.*, p 388 (citations omitted).]

The *Ora Jones* Court never explained, however, why a test is required to protect the defendant's due process rights, where "defense counsel requested the trial judge to instruct the jury" on the cognate lesser offense at issue. *Id.*, p 385.

We have recently recognized that "[n]otice would always be satisfied where the defendant requests the instruction." *People v Hendricks*, 446 Mich 435, 443, n 13; 521 NW2d 546 (1994). Despite this observation, we went on to state in *Hendricks* that "it is apparent from *Ora Jones* that the same class or category requirement retains its force even when it is the defendant who requests the lesser offense instruc-

tion." *Id.* But *Ora Jones* advanced only one justification for requiring that a requested cognate lesser
offense be in the same class or category as the
charged offense: "to provide fair notice to the defendant that he will be required to defend against
it . . . ." *Id.*, p 388. We have failed to articulate, in
*Hendricks* or any other case, a legitimate reason why
this requirement should "retain its force" when the
stated reason for creating it was flawed, and in fact
nonexistent.

*Hendricks* did suggest that restrictions on the
defendant's ability to demand cognate lesser offense
instructions are " 'required to prevent misuse of lesser
included offense instructions by the defense.' " *Id.*, p
446, quoting *People v Stephens*, 416 Mich 252, 262; 330
NW2d 675 (1982), citing *United States v Whitaker*,
144 US App DC 344; 447 F2d 314 (1971).[1]

> "In the absence of such restraint defense counsel might
> be tempted to press the jury for leniency by requesting
> lesser included offense instructions on every lesser crime

---

[1] In *Stephens*, the defense requested an instruction on a lesser misdemeanor offense, though the crime charged was a felony. The *Stephens*
Court held that "[i]n refusing to extend the rule of *Ora Jones* . . . to
lesser included misdemeanors, we are in accord with both Michigan and
federal precedent." *Id.*, p 263. We then held that a requested misdemeanor
offense must have an "inherent relationship" to the charged felony, further
restricting the defendant's ability to require cognate lesser offense instructions. *Id.*, p 262.

*Hendricks* further confused our cognate lesser offense jurisprudence by
imposing the "inherent relationship" misdemeanor test of *Stephens* as an
additional requirement of the *Ora Jones* rule. *Hendricks, supra*, p 444, citing *Stephens, supra*, p 262, and *People v Steele*, 429 Mich 13; 412 NW2d
206 (1987). This "inherent relationship" test examines whether there is a
"common purpose" to the charged offense and the cognate offense, which
protects the "same societal interest." *Hendricks, supra*, p 445.

The majority does not address the requirement in today's opinion. I no
longer adhere to the view that the "inherent relationship" test is appropriate in any context. Cf. *Steele, supra*, p 19.

that could arguably be made out from any evidence that happened to be introduced at trial. 'An element of the mercy-dispensing power is doubtless inherent in the jury system, and may well be a reason why a defendant seeks a lesser included offense instruction, but it is not by itself a permissible basis to justify such instruction.' " [*Hendricks, supra,* p 446, quoting *People v Steele,* 429 Mich 13, 20, n 4; 412 NW2d 206 (1987), quoting *Whitaker, supra,* p 349.][2]

These purported rationales are unjustified. They show a lack of confidence in the ability of this state's trial judges to exercise sound discretion in determining which defense theories can be rationally supported by the evidence fairly set forth at trial. Most important, they ignore the fundamental purpose of a trial, which is to determine which of two or more competing versions of the facts is actually true. By partially foreclosing the jury's ability to find the truth, simply because of lack of faith in the trial judge's discretion, this Court inverts its priorities.

I have been unable to discover any legitimate justification for requiring that a cognate lesser offense be of the "same class or category" as the charged offense, in order to grant a requested instruction.[3] We

---

[2] *Steele,* like *Stephens,* was a case in which the defendant had been charged with a felony and requested that a lesser misdemeanor offense instruction be given. *Steele, supra,* p 17.

[3] The majority argues that this doctrine protects the prosecution's sole duty to select and bring criminal charges. *Ante,* p 63, n 19. While it is true that the prosecutor has the sole duty and responsibility to select and file criminal charges, this Court has the sole duty and responsibility of overseeing the practice and procedure in this state's "one court of justice." Const 1963, art 6, §§ 4, 5. The goal of this practice and procedure is largely to promote truth-finding in our courts, and therefore trial judges must have the ability to " 'eliminate the distortion of the factfinding process.' " See part I(B), quoting *Hendricks, supra,* p 447, quoting *Spaziano v Florida,* 468 US 447, 455; 104 S Ct 3154; 82 L Ed 2d 340 (1984). Instructing the jury properly is one method of attaining this goal.

should reverse this line of cases, founded on a faulty premise, and institute a rule that is actually based on the legitimate purposes underlying it.

B

We have recognized that the fundamental purpose of criminal trials is the discovery of the truth:

> The object of a criminal trial is a determination of the question whether the defendant has committed the crime charged or some related offense on the basis of evidence presented relating to the event or events in question at trial. Additionally, determination of what crime, if any, a defendant is guilty of is necessary so that the proper punishment may be imposed. In order to achieve this end, especially in a jury trial, clarity must be maintained regarding those crimes for which a defendant may be convicted. [*Hendricks, supra,* pp 446-447.]

We adopted the language of the United States Supreme Court in explaining this point:

> "The absence of a lesser included offense instruction increases the risk that the jury will convict, not because it is persuaded that the defendant is guilty of capital murder, but simply to avoid setting the defendant free. . . . The goal . . . , in other words, is to eliminate the distortion of the factfinding process . . . ." [*Id.,* p 447, quoting *Spaziano v Florida,* 468 US 447, 455; 104 S Ct 3154; 82 L Ed 2d 340 (1984).]

In *Hendricks,* our answer to this problem of "the distortion of the factfinding process" was to artificially limit potential instructions because of our lack of faith in the trial judge's ability to determine proper instructions on the basis of the evidence: "it is likely that the evidence introduced will be 'whatever man-

ner of evidence . . . of use in obtaining a charge on the least punitive lesser included offense possible in order that the jury may have the opportunity to be merciful.' " *Id.*, quoting Ettinger, *In search of a reasoned approach to the lesser included offense*, 50 Brooklyn L R 191, 217 (1984). This is simply the wrong approach to the potential problem of distorted jury fact finding. Any evidence introduced must be relevant to the facts underlying the charged offense and cannot be overly confusing, repetitive, or unfairly prejudicial. MRE 401, 403. A theory that may be rationally based on such evidence is also proper for the jury to consider.[4]

Even accepting as true *Hendricks'* statement about the admission of "whatever manner of evidence," it is unclear how our method of limiting permissible defense theories is related to the stated problem:

> [T]he method of management adopted by this Court is to limit instruction to those offenses that bear a sufficient relationship to the principal charge in that they are in the same class or category, protect the same societal interests as that offense, and are supported by the evidence adduced at trial. [*Id.*]

I find no relationship whatever between our concern that "whatever manner of evidence" will be admitted, and our remedy of limiting requested cognate lesser offense instructions to those that are of the same class or category as the charged offense. The proper method of addressing the problem of distortion of the

[4] We are inconsistent in vesting the trial judge with vast discretion in determining the admissibility of evidence under MRE 403 and other rules, but not allowing that judge to use his discretion to determine whether a requested charge is consistent with a rational view of that admitted evidence.

fact-finding process is to admit relevant evidence, and then closely scrutinize the evidence admitted to determine whether a rational view of that evidence would support a conviction of the cognate lesser offense for which an instruction is requested.[5]

C

Here, the trial court's refusal to instruct on the cognate lesser offense of accessory after the fact distorted the fact-finding process. The only substantial evidence linking the defendant directly with the charged crime was the testimony of Ricco, who himself was strongly implicated in the crime. More extensive testimony was given by four other witnesses, linking the defendant to the post-crime acts of destroying evidence and impeding investigation of the crime. The jury could well have chosen to believe the four witnesses to the events after the arson and disbelieved the testimony of the codefendant regarding the arson itself. If this had been the case, the jury could have correctly found that the defendant did not take part in the actual firebombing and convicted him of the reprehensible acts of trying to hide the crime.

Because the jury was not permitted to find him guilty of being an accessory after the fact, however, and because he was the only defendant before it accused of a horrible crime, the jury might have cho-

---

[5] I note that the prosecutor's supplemental brief urges the Court to adopt a rational view of the evidence standard for all lesser included offenses, necessary and cognate alike. However, in this case, the Court is only presented with the question whether defendant's request for a cognate lesser included offense was improperly denied. Therefore, my opinion and analysis is limited to cognate lesser included offenses, since that is the only question before the Court.

sen to convict him " 'not because it is persuaded that the defendant is guilty of capital murder, but simply to avoid setting the defendant free.' " *Hendricks, supra,* p 447, quoting *Spaziano, supra,* p 455. Thus, the *Hendricks* rule, purportedly intended to protect the truth-finding process, may well have prevented the jury from finding the truth in this case.

II

The rule articulated in *Hendricks* and followed in this case is without reason and serves no purpose other than to make it more difficult for the defendant to demand a jury instruction on a cognate lesser offense. This case powerfully demonstrates the arbitrary nature of the rule: a viable, potentially persuasive defense theory, based on the testimony of prosecution witnesses, was foreclosed because it was not of the same class or category as the charged crime. This Court should recoil from such formalism.

A proper rule would permit the defendant to demand, and require the trial judge to give, a jury instruction on a cognate lesser offense where a reasonable view of the evidence would support the jury in finding the defendant guilty of the lesser offense. The current rule distorts the jury's fact-finding role, potentially depriving it of the ability to reach a true verdict. Rules propounded by this Court should bear some relationship to the purposes underlying them. I would reverse the holding of the Court of Appeals.

CAVANAGH and KELLY, JJ., concurred with BRICKLEY, J.