**Andre D. RODGERS, Petitioner,**

v.

**Warden STINE, Respondent.**

**No. 98–CV–73281–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 13, 1999.

Andre D. Rodgers, Munising, MI, pro se.

Vincent Leone, Asst. Atty. Gen., Attorney General Office, Habeas Corpus Div., Lansing, MI, for Respondent.

## OPINION

DUGGAN, District Judge.

Petitioner Andre Rodgers, a state prisoner currently confined at the Alger Correctional Facility in Munising, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1993, petitioner was convicted of second-degree murder and felony firearm following a jury trial in the Recorder's Court for the City of Detroit, for which he was ultimately sentenced to two concurrent terms of twenty-five to forty years imprisonment on the second-degree murder conviction and two years imprisonment on the felony firearm conviction. Petitioner alleges that his Due Process rights were violated when the trial judge refused to instruct the jury on the cognate lesser offense of accessory after the fact. For the reasons stated below, petitioner's request for habeas relief shall be denied and the petition for a writ of habeas corpus shall be dismissed.

## Background

Petitioner's convictions stem from the September 29, 1992, shooting death of Patricia Winters outside of her Laurel Street home in Detroit, Michigan.[1] At trial, the prosecution called several witnesses. Hattie Maxey, the victim's mother, testified that around 6:20 p.m. on September 29, 1992, she heard a knock on the front door of her house. According to Ms. Maxey, both she and her daughter answered the door. Thomas Alexander was at the door and asked if Victor Winters, the victim's brother, was there. Ms. Maxey's daughter informed Mr. Alexander that her brother was not in the house. At that point, Ms. Maxey left her daughter on the front porch with Mr. Alexander and returned to the house.

A few moments later, Ms. Maxey heard a gunshot, ran to the front door, and found her daughter lying on the front porch. Mr. Alexander, who was on the front steps, denied shooting Ms. Maxey's daughter. Ms. Maxey testified that she did not see Mr. Alexander with a weapon at any time during the encounter. Ms. Maxey also testified that Mr. Alexander telephoned her later that night and told her that Dray had shot her daughter because her son, Victor Winters, had failed to pay Dray for drugs that he had given him.

Thomas Alexander also testified at trial.[2] Mr. Alexander testified that he had known petitioner for four or five years and that petitioner's nickname was "Dray." Mr. Alexander then described the series of events that led to petitioner giving Victor

---

1. Ms. Winters was seven months pregnant at the time of the shooting. Her baby was delivered alive after the shooting, but died forty-four days later. Petitioner was charged with first-degree murder, attempted murder, and felony firearm.

2. Mr. Alexander testified pursuant to a plea agreement in which he pleaded guilty to second-degree murder with a sentence recommendation of ten to twenty-five years imprisonment in exchange for his testimony against petitioner.

Winters, the victim's brother, some drugs to sell for petitioner.[3] According to Mr. Alexander's testimony, after petitioner was unsuccessful in locating Mr. Winters and claiming the proceeds from the sale of the drugs, petitioner shot the victim in retaliation.

Mr. Alexander stated that he and petitioner drove to Ms. Maxey's house in separate cars. After arriving at the house, Mr. Alexander first approached the house and asked if Victor Winters was there. After being told that Victor Winters was not at the house, Mr. Alexander turned to return to his car, at which point he saw petitioner come up to the porch with a black bag in his hand and shoot the victim. Mr. Alexander also testified that petitioner had admitted to shooting the victim in front of a man named Thomas Harper, as well as his girlfriend, Dwanda Reese.

The prosecution also called Lashanda Johnson, a neighbor who lived two houses away from the victim. Ms. Johnson testified that she had observed two cars approach the victim's house around 6:20 p.m. on September 29. Ms. Johnson saw a man walk up to the front porch and speak with Ms. Maxey and the victim for a few minutes. Then, Ms. Johnson saw a second man, who was carrying a black plastic bag, approach the porch. At that point, Ms. Johnson heard a gunshot, turned, and saw the second man, who had been carrying the plastic bag, run from the victim's porch, jump into a car, and speed away. After the car sped away, Ms. Johnson saw the first man approach the victim's porch steps and speak with the victim's mother, Hattie Maxey. Ms. Johnson, however, was unable to identify either of the men involved in the incident because she had seen only a side view of them.

Although petitioner did not testify at trial, his October 3, 1992, statement to the police was admitted into evidence. In his statement, petitioner admitted being at Ms. Winters's house when the shooting occurred, but denied shooting her. Petitioner claimed that Mr. Alexander shot Ms. Winters because her brother had run off with his drugs, not petitioner's drugs. According to petitioner's statement, he told Mr. Alexander to get rid of the gun, but acknowledged that he did not know what Mr. Alexander had ultimately done with it.[4] Petitioner also stated that he would not let Mr. Alexander get into his car following the shooting.

### Procedural History

The jury found petitioner guilty of second-degree murder, MICH. COMP. LAWS § 750.317, attempted murder, MICH. COMP. LAWS § 750.91, and felony firearm, MICH. COMP. LAWS § 750.227b. The trial court sentenced petitioner to concurrent terms of twenty-five to forty years imprisonment for the murder and attempted murder convictions, with a consecutive sentence of two years imprisonment for the felony firearm conviction.

Petitioner filed an appeal as of right with the Michigan Court of Appeals. The court of appeals reversed and vacated all three of petitioner's convictions. *See People v. Rodgers*, No. 163255 (Mich.Ct.App. May 23, 1995). According to the court of appeals, the trial court committed reversible error by refusing to instruct the jury on the cognate lesser offense of accessory after the fact, although the evidence presented at trial supported such an instruction.[5] *Id.* at 1. Furthermore, the trial court's error could not be considered harmless because it was evident from the

---

3. Mr. Winters also testified at trial that he had met petitioner on the day of the shooting and agreed to sell drugs for him.

4. Petitioner bases his argument that he was entitled to an instruction on the lesser offense of accessory after the fact on his statement to the police that he told Mr. Alexander to dispose of the gun.

5. The court of appeals also held that the trial court committed reversible error by instructing the jury on attempted murder, a specific intent crime, but reading the jury instruction for second-degree murder, a general intent crime.

jury's finding of second-degree murder, an intermediate offense, instead of first-degree murder, that the jury "may have questioned the extent of defendant's guilt." *Id.* The court of appeals found that the requested instruction would have been especially helpful in addressing the jury's confusion regarding petitioner's potential guilt as an accomplice.[6] *Id.*

The prosecution filed an application for leave to appeal to the Michigan Supreme Court. Initially, the supreme court denied leave to appeal. *See People v. Rodgers,* 451 Mich. 894, 549 N.W.2d 321 (1996). Upon reconsideration, however, the Michigan Supreme Court vacated its prior order and remanded the case to the court of appeals for reconsideration in light of *People v. Mateo,* 453 Mich. 203, 551 N.W.2d 891 (1996), in which the Michigan Supreme Court discussed the appropriate standard of review for evidentiary errors involving improperly admitted evidence. *People v. Rodgers,* 453 Mich. 883, 554 N.W.2d 12 (1996).

On remand, the Michigan Court of Appeals again reversed and vacated petitioner's convictions, distinguishing the evidentiary errors discussed in *Mateo* from the errors before the court. *People v. Rodgers,* No. 197802 at 2 (Mich.Ct.App. Mar. 11, 1997). According to the court of appeals:

[T]he trial court failed to provide a requested instruction on the lesser offense of accessory after the fact even though there was evidence to support that instruction, an error we considered not to be harmless in light of the jury finding defendant guilty of another intermediate charge. In addition, the requested accessory after the fact instruction would have addressed the obvious confusion expressed by the jury in questions addressed to the court.

*Id.* The court of appeals, finding the trial court's error "to be much more egregious than the evidentiary error considered in *Mateo,*" concluded that the trial court's error would require reversal under any standard of review. *Id.*

In lieu of granting leave to appeal, the Michigan Supreme Court peremptorily reversed the court of appeals's decision, stating that the court of appeals had "erred by holding that the trial court's refusal to give the jury instruction was not harmless error." *People v. Rodgers,* 455 Mich. 868, 568 N.W.2d 81 (1997). According to the supreme court, "[t]he fact that the jury returned a verdict finding the defendant guilty of both second-degree murder *and felony-firearm* establishe[d] that the jury rejected the defendant's theory that he was not the shooter and merely assisted the shooter after the murder." *Id.* "Consequently, the failure to instruct the jury on accessory after the fact constituted harmless error."[7] *Id.*

---

6. At trial, the court received a note from the jury inquiring whether "[i]n order to be guilty of second degree murder, does that mean he had to shoot Patricia Winters or being [sic] an accomplice?" (Tr. at 480). After noting that the jury was not instructed on aiding and abetting, but was instructed on accomplice liability, the trial judge, prosecuting attorney, and defense counsel had a long discussion regarding how the judge should answer the question. After remarking that the jury was confusing accessory with accomplice, the trial judge answered:

First, let me talk to you about the word "accessory." Accessory and accomplice are not the same thing. Now I am interpreting this note to mean that you thought they might be, but they are not. So whatever I say from here on end, I want you to put out of your mind the word "accessory." It has no place in this case. It is a legal term

that has very specific meaning. That does not fit this case, and we have not used that word in front of you up to now.

\* \* \* \* \* \*

In answer to your question as to whether or not in order for Mr. Rodgers to be guilty of second degree murder, does it mean that he had to shoot Patricia Winters or being [sic] accomplice?

The answer is yes. Either.

(Tr. at 483). Petitioner argues that the trial judge's response amounted to an instruction on accomplice liability even though the prosecutor never presented evidence or argued that petitioner was an accomplice at trial, while defense counsel's request for an accessory after the fact instruction was denied.

7. Apparently, petitioner's convictions for second-degree murder and felony firearm were

Petitioner filed a petition for writ of habeas corpus on July 27, 1998, asserting that his Due Process rights were violated when the trial court refused to provide a jury instruction on the lesser offense of accessory after the fact. (Pet'r Br. at 7). According to petitioner, an instruction regarding accessory after the fact should have been given because the evidence presented at trial supported such an instruction. Furthermore, petitioner argues that the instruction should have been provided given the jury's confusion regarding the terms "accessory" and "accomplice." [8] Respondent filed an answer to the petition on July 23, 1999, asserting that petitioner's claim is not cognizable upon habeas review because the Constitution of the United States does not require instruction on lesser offenses. (Resp't Answer at 5–6). Respondent further argues that, even if petitioner's claim is cognizable upon habeas review, the state court's decision was not "contrary to, or an unreasonable application of, a United States Supreme Court decision." (*Id.* at 6).

### Analysis

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this controversy because petitioner filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997). Under AEDPA, a federal court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In defining the appropriate standard of review that a federal court should employ in evaluating a state court's judgment, the AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, to succeed under § 2254, a habeas petitioner must first establish that a constitutional right has been implicated by the state court judgment. Second, the petitioner must establish either that the state court's decision involved an unreasonable application of clearly established federal law, or that the state court's decision was an unreasonable determination of facts in light of the evidence presented at trial.

*Petitioner's Claim is Not Cognizable on Habeas Review*

 Petitioner alleges that his Due Process rights were violated when the trial judge refused to instruct the jury on the cognate lesser offense of accessory after the fact. Under Michigan law, an accessory after the fact is defined as " 'one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial, or punishment.' " *People v. Lucas,* 402 Mich. 302, 304, 262 N.W.2d 662 (1978) (quoting Rollin M. Perkins, Criminal Law 667 (2d ed.1969)). At the time of petitioner's con-

---

reinstated on remand and his conviction for attempted murder was vacated. This Court's file does not include a copy of the trial court's order.

**8.** The Court notes that the jury did not use the term "accessory." *See supra* note 6. It is not clear to this Court why the trial judge interpreted the jury's question regarding accomplice liability as confusing the term "accessory" with "accomplice." (Tr. at 482).

victions, the Michigan Court of Appeals had ruled that the cognate lesser offense of accessory after the fact required an instruction if there was evidence at trial to support it.[9] *See, e.g., People v. Usher,* 196 Mich.App. 228, 231–34, 492 N.W.2d 786 (1992) (holding that accessory after the fact is a cognate lesser offense of aiding and abetting murder and requires an instruction if evidence supports it). Petitioner therefore claims that his Due Process rights were violated when the trial court, contrary to Michigan law and the evidence presented at trial, refused to instruct the jury on the lesser offense of accessory after the fact.

■ If petitioner's claims were based solely on a perceived error of state law, he would clearly not be entitled to relief from this Court. "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (stating that it was incorrect for court of appeals to base its conclusion on fact that evidence was incorrectly admitted under state law). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68, 112 S.Ct. at 480.

■ Petitioner, however, claims that the state court's refusal to instruct the jury on the lesser charge violated his Due Process rights. In *Bagby v. Sowders,* 894 F.2d 792, 795–97 (6th Cir.1990) (en banc), however, the United States Court of Appeals for the Sixth Circuit held that the Constitution does not require state courts to instruct the jury on lesser offenses in noncapital cases, even where the instruction is supported by the evidence. According to the Sixth Circuit, a failure to instruct on lesser offenses in noncapital cases is not "such a fundamental defect as inherently results in a miscarriage of justice or an

omission inconsistent with the rudimentary demands of fair procedure." *Id.* at 797 (indicating that the 3d, 5th, 8th, 9th, 10th, and 11th Circuits agreed with the court's view). Under *Bagby,* petitioner had no Constitutional right to an instruction on the lesser charge of accessory after the fact. Therefore, petitioner has no cognizable claim on habeas review and his petition for writ of habeas corpus must be denied.

*The State Court Judgment Was Not An Unreasonable Application of Clearly Established Federal Law*

Furthermore, the state court's refusal to instruct the jury on the lesser offense of accessory after the fact was not contrary to, or an unreasonable application of, clearly established federal law. In evaluating a petitioner's claim under § 2254(d)(1), the Court must determine whether the state court's decision represents an unreasonable application of clearly established federal law. In determining what constitutes clearly established federal law, the Court is restricted to pertinent United States Supreme Court precedent. § 2254(d)(1); *see also Herbert v. Billy,* 160 F.3d 1131, 1135 (6th Cir.1998) ("A district court or court of appeals no longer can look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.").

■ To evaluate the reasonableness of a state court's decision, the Court applies a "reasonable jurist" standard, under which habeas relief should be granted only if "a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." *Nevers v. Killinger,* 169 F.3d 352, 361 (6th Cir.) (quoting *Drinkard v. Johnson,* 97 F.3d 751, 769 (5th Cir. 1996)), *cert. denied,* —— U.S. ——, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999). Under

---

9. Under Michigan law, a defendant may request and receive instructions on necessarily included lesser offenses without regard to the evidence, and on cognate lesser offenses only if the evidence would support a conviction on the lesser offense. *See People v. Beach,* 429

Mich. 450, 464–65, 418 N.W.2d 861 (1988). However, the Michigan Supreme Court has recently held that accessory after the fact is not a cognate lesser offense of murder. *See People v. Perry,* 460 Mich. 55, 66, 594 N.W.2d 477 (1999).

the reasonable jurist standard, a state court's application of clearly established Supreme Court precedent is deemed unreasonable and, therefore, not debatable among reasonable jurists, "if it is 'so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.'" *Id.* at 362 (quoting *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir.1998)); *see also Tucker v. Prelesnik*, 181 F.3d 747 (6th Cir.1999).

█ The United States Supreme Court has yet to address whether a failure to instruct the jury on a lesser offense in a noncapital case violates the Constitution. In *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the United States Supreme Court held that a death sentence could not constitutionally be imposed after a jury trial in which the jury was not permitted to consider lesser offenses. The Supreme Court revisited the issue in two subsequent cases, each involving capital offenses. *See Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). The Supreme Court, however, has not addressed the issue in regard to noncapital cases.

Moreover, most federal courts of appeal that have considered the issue have concluded that the Constitution does not require an instruction on lesser offenses in noncapital cases. *See Bagby v. Sowders*, 894 F.2d 792 (6th Cir.1990); *Tata v. Carver*, 917 F.2d 670 (1st Cir.1990); *Chavez v. Kerby*, 848 F.2d 1101 (10th Cir.1988); *Perry v. Smith*, 810 F.2d 1078 (11th Cir.1987); *Alexander v. McCotter*, 775 F.2d 595 (5th Cir.1985); *Nichols v. Gagnon*, 710 F.2d 1267 (7th Cir.1983). *But see Vujosevic v. Rafferty*, 844 F.2d 1023 (3d Cir.1988) (holding that state court's failure to instruct on lesser offense was reversible error). Given that a number of federal courts of appeal have held that the Constitution does not require an instruction on lesser offenses, this Court cannot conclude that the state court's refusal to instruct

the jury on the lesser offense was "so clearly incorrect that it would not be debatable among reasonable jurists." Therefore, this Court finds that the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law.

*The State Court Judgment Did Not Involve An Unreasonable Determination of Facts*

█ Petitioner's claim must also fail under § 2254(d)(2). In evaluating whether a state court's decision constitutes an unreasonable determination of the facts, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id. See also Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir.1998), *cert. denied*, —— U.S.——, 119 S.Ct. 2403, 144 L.Ed.2d 802 (1999).

Petitioner argues that his pre-trial statement to the police justified an instruction on the lesser offense of accessory after the fact. The Supreme Court of Michigan, however, concluded otherwise. According to the supreme court, "[t]he fact that the jury returned a verdict finding the defendant guilty of both second-degree murder *and felony firearm* establishes that the jury rejected the defendant's theory that he was not the shooter and merely assisted the shooter after the murder." *Rodgers*, 455 Mich. at 868, 568 N.W.2d 81. Where "the highest court of the state has reviewed a defendant's request for a lesser included offense instruction and concluded that it is not warranted by the evidence elicited at trial, that conclusion is axiomatically correct, as a matter of state law." *Bagby*, 894 F.2d at 795. This Court should not intervene "unless failure to give the instruction amounts to a fundamental miscarriage of justice likely to have resulted in the conviction of an innocent person." *Id.* (citing *Nichols*, 710 F.2d at 1269). Furthermore, as this Court previously noted, the Michigan Supreme Court has re-

cently held that accessory after the fact is not a cognate offense of murder and, therefore, even if there is evidentiary support for the offense of accessory after the fact, such evidentiary support does not require that the instruction be given.[10] *See People v. Perry,* 460 Mich. 55, 63, 594 N.W.2d 477 (1999). Even if the trial court was in error in failing to give the instruction, given the evidence of petitioner's guilt, including eyewitness testimony, such failure to instruct the jury on the lesser charge of accessory after the fact did not amount to a fundamental miscarriage of justice that was likely to result in the conviction of an innocent man.

Accordingly, for the reasons set forth above, the petition for writ of habeas corpus shall be denied.

A Judgment consistent with this Opinion shall issue forthwith.

---

**10.** *See supra* note 9. In explaining its ruling, the Court stated:

Specifically, the defendant has a right to notice of the charge, while the prosecutor has the right to select the charge and avoid verdicts on extraneous lesser offenses pre-

ferred by the defendant.... The prosecutor, however, did not choose [to charge the defendant as an accessory after the fact], and defendant does not have the right to interpose that alternative charge.

*Perry,* 460 Mich. at 63 n. 19, 594 N.W.2d 477.