*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GABRIELLE MARIE BRANTLEY,

        Defendant-Appellant.

UNPUBLISHED
May 14, 2026
10:45 AM

No. 369581
Wayne Circuit Court
LC No. 20-000768-01-FC

Before: BAZZI, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

This case involves a love triangle between defendant, the victim, and a man with whom both women were in a relationship. Defendant was ultimately charged and convicted of first-degree premeditated murder and assault causing death to a fetus or embryo after the pregnant victim was found shot and dead. Defendant now appeals, arguing that there was insufficient and improper evidence for her convictions. We affirm.

## I. BACKGROUND

The victim was intermittently involved with Darnell Stevenson for almost a year and was pregnant at the time of her death. Defendant also had a relationship with Stevenson. Defendant argued with the victim about their relationships with Stevenson and sent the victim explicit photos that depicted defendant with Stevenson. The situationship between the three of them ended when the victim was found dead with nine gunshot wounds, including one shot that passed through the victim's uterus and decapitated the fetus.

On the night of the murder, the victim left work around 11:30 p.m. and headed to the area of Bentler Street and Pilgrim Street in Detroit. A witness who lived on Bentler Street arrived home, found a black truck and a silver Malibu parked in front of his home, and observed two individuals talking between the vehicles. About ten minutes after entering the home, the witness heard gunshots, looked out his front window, and saw the victim lying in the street. He testified that the other individual drove the silver Malibu around the corner, stopped and exited the vehicle, returned to the victim, and shot the victim several more times. The witness opined that the two individuals were of similar size but believed that they were both male.

Telephone records showed a Tracfone made three calls to the victim's phone that night: (1) at 7:39 p.m., lasting about five seconds; (2) at 11:04 p.m., lasting 24 minutes and 51 seconds; and (3) at 11:31 p.m., lasting 56 seconds. Police obtained video surveillance showing defendant purchasing the Tracfone just days earlier. In addition, an extraction from defendant's personal phone showed a photo of the Tracfone, as well as angry text messages to Stevenson about the victim. Police also determined that a silver Malibu was registered to defendant, and police subsequently searched the vehicle and found Tracfone paperwork inside.

Defendant was taken into custody and read her *Miranda*[1] rights before two detectives conducted an interview with defendant. Throughout the interview, defendant stated that she needed representation but also wanted to speak to the detectives. The interview began with defendant declining to sign the form affirming she understood her rights, and the following exchange occurred:

> *Defendant*. Why are you guys placing me under arrest?
>
> *Detective 1*. Give me a second.
>
> *Defendant*. Can I call somebody? I need representation.
>
> *Detective 1*. Okay. (Detectives push chairs out to stand.)
>
> *Defendant*. No, I'm sorry, okay, okay, okay. I need to understand why I'm here.
>
> *Detective 1*. Ms. Brantley—
>
> *Detective 2*. You said that you want to talk or not?
>
> *Defendant*. I don't understand—
>
> *Detective 1*. Either you, listen, you gotta understand because things are different from what they were before so no no I need you to follow me, follow me, when you ask for a lawyer, then everything stops.
>
> *Defendant*. Okay, can we continue?
>
> *Detective 1*. So do you want a—you don't want a lawyer?
>
> *Defendant*. No, I—
>
> *Detective 1*. Let's make it clear.
>
> *Defendant*. I want to know what's going on.

---

[1] *Miranda v Arizona*, 384 US 436, 474; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*Detective 1*.  Okay, so are you sure?

*Defendant*.  I'm sure, I want to understand.

*Detective 1*.  Okay, alright.

Detectives asked defendant to tell them what happened the days leading up to the murder and told defendant that the interview would end if she did not respond.  Defendant asked if she could call her lawyer and the detective told her that the conversation would end once she asked for a lawyer.  Defendant then proceeded to beg the detective to listen to her and she confirmed that she would continue to talk to the detectives without a lawyer.

After talking to the detectives for twenty minutes, defendant said that she "need[ed] a lawyer."  The detectives told her that if she needed a lawyer, they would stop.  After spending several minutes telling defendant that she was detained but it was her choice whether she wanted to speak, the detectives confirmed with defendant that she wanted to talk and did not want a lawyer at that moment.

After the interview was over and defendant was transported to the Detroit Detention Center (DDC), defendant informed detectives that she wanted to talk again.  During the subsequent interview, she placed herself at the scene with Stevenson.  An analysis of Stevenson's cell phone showed that his phone was not near the murder when it occurred.

The trial court denied defendant's motion to suppress all statements that she made to detectives.  At trial, detectives testified about text messages between defendant and Stevenson; about defendant's internet history, including searches for news websites, facts about death, the Wayne County Morgue, ballistics, and the victim's name; and about the search of defendant's silver Malibu and the Tracfone paperwork inside.  The prosecutor also showed video evidence during trial, including footage of a silver Malibu in the neighborhood near the time of the murder and defendant's interviews with the detectives.

The jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), and assault of a pregnant individual causing miscarriage or stillbirth, MCL 750.90b(a), and acquitted defendant of two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  Defendant was sentenced to life imprisonment for the murder conviction, and 71 months to 15 years' imprisonment for the assault-causing-miscarriage conviction.

Defendant now appeals.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant argues that insufficient evidence was presented to sustain her convictions.  We review de novo defendant's challenge to the sufficiency of the evidence and view the evidence "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v*

*Baskerville*, 333 Mich App 276, 282; 963 NW2d 620 (2020). During our review, reasonable inferences and credibility choices are made in support of the jury's verdict. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015).

The jury found defendant guilty of first-degree premeditated murder, which requires the prosecutor to prove beyond a reasonable doubt that defendant intentionally killed a human with premeditation and deliberation. *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018); MCL 750.316(1)(a). "Premeditation may be established through evidence of (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008). Additionally, defendant was convicted of assault causing death to the embryo or fetus under MCL 750.90b(a), which is punishable "without regard to the [accused's] intent or recklessness concerning the fetus or embryo." *People v Kurr*, 253 Mich App 317, 322; 654 NW2d 651 (2002).

Defendant argues that there was evidence that contradicted the prosecutor's theory of the shooting, including the witness's identification of the shooter as a man and the victim's familiarity with the area where the shooting occurred. But a prosecutor does not need to "disprove every reasonable theory consistent with innocence"; the evidence is sufficient if it proved the elements of the crime beyond a reasonable doubt "in the face of whatever contradictory evidence the defendant may provide." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (cleaned up). Furthermore, "a jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999).

Here, the jury was presented sufficient evidence to convict defendants of the charges. Defendant repeatedly sent Stevenson angry text messages regarding his romantic involvement with the victim. Days before the murder, defendant purchased a burner phone, and that phone was used to call the victim within minutes of when the murder occurred. And after the murder, defendant's other phone recorded internet searches including the victim's name, ballistics, various news outlets, questions about death, and the Wayne County Morgue.

Although the witness identified the shooter as male, the witness also believed the victim was male, which was a mistake. Regardless of that mistake, the witness identified the shooter's vehicle as a silver Malibu, which is the same style of vehicle defendant drove. A silver Malibu was also seen on video driving in the area, and defendant admitted to being in the area that night. Although there may have been some evidence that the jury could use to infer that defendant was innocent, that scant amount does not negate the rest of the evidence presented, which was sufficient for the jury to conclude beyond a reasonable doubt that defendant was guilty of first-degree premeditated murder and assault causing death to a fetus.

## B. WAIVER OF COUNSEL

Defendant also argues that she was denied a fair trial because she did not voluntarily waive her right to counsel during her interview with the detectives. Because defendant did not argue the voluntariness of her waiver of counsel in the trial court, the issue is subject to plain-error review. *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021). To avoid forfeiture of her rights under plain error, defendant must prove that a clear or obvious error occurred that affected her

substantial rights, such as "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceeding." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). If there was plain error, we will reverse if defendant was innocent or "an error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* at 763-764 (cleaned up).

An accused individual has a constitutional right against self-incrimination, US Const, Am V; Const 1963, art 1, § 17, and to protect this right, the accused must be advised before custodial interrogation that she has the right to remain silent, that any statement she does make may be used against her, and that she has a right to an attorney, *People v Cortez (On Remand)*, 299 Mich App 679, 691; 832 NW2d 1 (2013). If a statement is made during custodial interrogation, then such statement is "inadmissible unless the accused voluntarily, knowingly, and intelligently waived" her rights under the Fifth Amendment. *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010).

If an accused individual asserts her right to counsel, then law enforcement must cease further interrogation until counsel has been made available. *Miranda v Arizona*, 384 US 436, 474; 86 S Ct 1602; 16 L Ed 2d 694 (1966). But if the accused herself "initiates further communication, exchanges, or conversations with the police," which is more than just responding to further police-initiated interrogation, then defendant may have knowingly and intelligently waived the right she invoked. *Edwards v Arizona*, 451 US 477, 484-485; 101 S Ct 1880; 68 L Ed 2d 378 (1981). "The proper inquiry is whether the defendant reinitiated a conversation on the subject matter of the investigation and whether, under the totality of the circumstances, the defendant knowingly and intelligently waived his rights to counsel and to remain silent." *People v Clark*, 330 Mich App 392, 418; 948 NW2d 604 (2019) (cleaned up).

Here, defendant argues that the video of her interview should have been excluded because she did not voluntarily waive her right to counsel. Whether defendant waived her right to counsel is a close question given defendant's statements that she wanted to talk to counsel but also wanted to talk to the police. The record indicates that defendant asserted her right to counsel one minute but then reinitiated the conversation and waived that right in the next, over and over again.

But even assuming that defendant did not waive her right to counsel, defendant has not proven that admission of this evidence was outcome-determinative. The admission of evidence in violation of *Miranda* does not require reversal if it was harmless beyond a reasonable doubt and there was "no reasonable possibility that the evidence complained of might have contributed to the conviction." *People v Whitehead*, 238 Mich App 1, 7-8; 604 NW2d 737 (1999).

Defendant acknowledges that she did not admit guilt or knowledge about the victim's death during the interrogation. Instead, she alleges that she was disadvantaged by the video showing her demeanor and evasive answers. Although the prosecutor argued that defendant was untruthful, the prejudice from such references "depends on the overall strength of the case against the defendant and the degree to which the jury's assessment of the evidence might have been affected by the prosecutor's references." *People v Shafier*, 483 Mich 205, 222-223; 768 NW2d 305 (2009). As already discussed, there was sufficient evidence to convict defendant without relying on portions of the video of the interview, including the phone records, defendant's vehicle at the scene, and the witness's testimony.

## III. CONCLUSION

Given the sufficiency of the evidence that was untainted by any alleged error, the jury could have found that defendant was guilty beyond a reasonable doubt of first-degree premediated murder and assault causing death to a fetus.

Affirmed.

/s/ Mariam S. Bazzi
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle