# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARK SHANE FREY,

        Defendant-Appellant.

UNPUBLISHED
September 22, 2015

No. 321671
Washtenaw Circuit Court
LC No. 13-000999-FH

Before: BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals by right his conviction of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(b) (relationship). Defendant was convicted following a jury trial and the trial court sentenced him to 3 to 15 years' imprisonment with credit for 281 days served. For the reasons set forth in this opinion, we affirm defendant's conviction, and remand to the trial court for a determination of whether resentencing is warranted under *People v Lockridge*, ___Mich___; ___NW2d___(2015) (Docket No. 149073) and *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005).

## A. FACTS

The victim, age 13 at the time of the offense, is the daughter of a woman with whom defendant had a relationship. Testimony showed that the victim lived in an apartment with her mother, two siblings, and defendant. The victim testified that one evening in July 2013, she was at home with defendant, her mother and siblings. The victim testified that her mother and defendant were on a mattress in the living room and she lay on an adjacent couch while the three watched television with the lights off; the victim's legs were next to defendant as he lay on the mattress. The victim testified that at some point, she felt what she thought was a spider crawl up her leg from near her ankle. She then figured out that it was defendant's hand. At first, she thought that defendant was just moving her leg over, but defendant continued running his hand up her leg.

The victim testified that she began to send text messages to her sister who lived in another apartment and told her that she thought defendant was trying to do something with her. The victim testified that defendant's hand continued moving up her leg, over her thigh and to her "private." At the same time, the victim explained, her sister texted her and told her to sneak out and come over to her apartment. The victim replied that she could not, and then texted her that

-1-

defendant was rubbing her legs, trying to spread her legs, and trying to put his hand in her pants. The victim testified that what she had texted her sister was true. She also testified that defendant put his hand through the leg hole of her shorts and touched her vagina under her underwear. The victim testified that the touching stopped when there was a knock at the door and defendant went to answer it. According to the victim, her sister was at the door and asked if the victim could come over to her apartment and spend the night; the victim left with her sister.

The next morning, the victim's mother came to the sister's apartment; the victim testified that she saw her mother and sister argue, but then her mother called the police. When the police arrived, the victim told them what had occurred. The victim testified that her mother did not believe her and evidence was presented to show that defendant made statements indicating that he thought that the victim's mother was going to go to the prosecutor's office so that the victim could recant her statements. The victim testified that her mother took her to the prosecutor to tell him that she lied about what had occurred, but they were unable to meet with the prosecutor. However, the victim later again met with police and made statements that were similar to the initial interview with the exception of her stating that the touching could have been accidental.

The victim later wrote a letter to the prosecutor and the police stating that the incidents did not really happen, and that defendant might have accidently touched her leg while moving it back on the couch. The victim explained at trial that her mother prompted her to write the letter and told her what to write, telling the victim that if she wrote the letter she could move back into her grandfather's home.

## B. ANALYSIS

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues the evidence was insufficient to support his conviction. Citing the victim's varied testimony concerning whether he touched her vagina, defendant claims the victim's testimony was so full of contradictions that, even when viewed most favorably to the prosecution, no rational juror could have found that he was guilty beyond a reasonable doubt.

We review de novo a challenge to the sufficiency of the evidence. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). In doing so, we review the evidence in a light most favorable to the prosecutor to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

To support the CSC II charge, the prosecution was required to prove beyond a reasonable doubt (1) that defendant engaged in sexual contact, (2) with a victim that was at least 13 years of age but less than 16 years of age, and (3) that defendant was a member of the same household as the victim. MCL 750.520c(2)(b)(*ii*). Sexual contact is "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts . . . for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . . ." MCL 750.520a(q). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock, or breast of a human being." MCL 750.520a(f).

The prosecution presented evidence to support all of the elements of CSC-II beyond a reasonable doubt. Testimony showed that the victim was age 13 at the time of the conduct, that defendant was in a relationship with the victim's mother and lived in the same apartment as the victim and her mother at the time of the touching. This evidence supported the second and third elements of the CSC-II charge. In addition, the victim's testimony that defendant touched her was also sufficient evidence to support the first element—i.e. that defendant engaged in sexual contact with the victim. While defendant contends that the victim's testimony was inconsistent, it is well-settled that in reviewing a challenge to the sufficiency of the evidence, "[w]e 'will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012) (quotation marks omitted). Moreover, contrary to defendant's argument, the prosecutor was not required to show that defendant actually touched the victim's vagina to support a CSC-II conviction, MCL 750.520a(f), where the victim testified that defendant touched the inside of her thigh. While the victim admitted that this touching could have been accidental, "[A] a jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999).

## II. PRESENTENCE INVESTIGATION REPORT

Defendant next argues that the trial court erred when it refused to strike from the presentence information report (PSIR) the author's opinion that defendant was attempting to "groom" the victim.

We review the sentencing court's response to a claim of inaccuracies in defendant's PSIR for an abuse of discretion. *People v Spanke*, 254 Mich App 642, 648; 658 NW2d 504 (2003). "An abuse of discretion occurs . . . when the trial court chooses an outcome falling outside [the] principled range of outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Based upon his reading of a police report, the probation officer who prepared the PSIR offered the opinion that defendant was attempting to groom the victim in order to have a sexual relationship. Defendant challenged this characterization below, but did not offer any indication to the trial court why it was an inaccurate reading of the police report. Nor does he do so on appeal. Instead, he challenges the probation officer's ability to provide expert witness or lay opinion testimony under the rules of evidence. As to the latter, "[t]he rules of evidence do not apply to a sentencing proceeding." *People v Uphaus*, 278 Mich App 174, 183; 748 NW2d 899 (2008). As to the former, "[w]hen a defendant challenges the accuracy of the information, the defendant bears the burden of going forward with an effective challenge." *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009). Because defendant presented nothing in support of his challenge, he has not shown that the trial court abused its discretion.

## III. SENTENCING

Defendant challenges his sentence on three grounds: first, defendant challenges the scoring of Offense Variables (OVs) 4 and 19, second, defendant contends that the trial court relied on inaccurate and incomplete information during sentencing in violation of his constitutional rights, and third, defendant contends that the trial court violated his Sixth

Amendment right to a jury trial under *Alleyne v United States*, 570 US___; 133 S Ct 2151; 186 L Ed 2d 314 (2013) when it engaged in judicial fact-finding to score the relevant OVs.

With respect to defendant's constitutional challenges, we review constitutional issues de novo. *People v Beam*, 244 Mich App 103, 105; 624 NW2d 764 (2000). Because defendant did not object on constitutional grounds during sentencing, our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). With respect to the factual basis underlying the trial court's scoring of the challenged OVs, "[u]nder the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

### i. Scoring of the OVs

We first address defendant's factual challenges to the scoring of the OVs. In this case, the trial court scored OV 4 (psychological injury) at 10 points, OV 10 (vulnerable victim) at 10 points, and OV 19 (interference with the administration of justice) at 10 points for a total OV score of 30 and an OV Level III. Defendant's total PRV score was 10 for a PRV Level C. The recommended minimum sentencing range for a Class C offense with an OV Level III and PRV Level C is 19 to 38 months. See MCL 777.167 (CSC II is a Class-C offense); MCL 777.64 (sentencing grid for a Class C offense). The trial court sentenced defendant to a 3-year (36 month) minimum sentence, which fell within the guidelines' range.

Defendant contends that the trial court erred in scoring OV 4 at 10 points. MCL 777.34 governs the scoring of OV 4 and directs a trial court to assess 10 points where "[s]erious psychological injury requiring professional treatment occurred to a victim." In this case, at trial, evidence was introduced that the victim was sexually assaulted and then efforts were made to try and force her to recant statements she made to the police. The victim moved in with her grandfather after the sexual contact and she went to counseling. The victim testified that she spoke about the incident to her counselors. Although the victim did not specifically testify that she suffered *severe* mental distress, she did state that she felt guilty both because "before this happened, I thought he was a really nice guy and I felt horrible" and because other people were "making me feel guilty." Although the latter statement also involves pressure by individuals other than defendant, the entire recitation could be fairly said to support a finding that the victim sought psychological counseling because of what she had endured from defendant, and from others on his behalf. In short, there was a preponderance of the evidence to support the scoring of OV 4 at 10 points. *Hardy*, 494 Mich at 438. Because the scoring of OV 4 was supported by a preponderance of the evidence, trial counsel was not ineffective for failing to challenge the scoring of this variable. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Next, defendant argues that the trial court erred in scoring OV 19 at 10 points. MCL 777.49 governs the scoring of OV 19 and it directs a trial court to assess 10 points where "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice."

-4-

Defendant does not argue that insufficient evidence was presented to support a finding that the victim's mother may have attempted to coerce the victim into changing her story; he argues that no evidence linked him to any such attempt. Testimony was presented, however, showing that defendant was linked to the actions of the victim's mother through introduction of defendant's communications with his mother wherein he told her to make sure the victim's mother took the victim to the prosecutor's office to recant her allegations. Accordingly, the trial court did not clearly err in scoring OV 19 at 10 points and the scoring was supported by a preponderance of the evidence. *Hardy*, 494 Mich at 438.

### ii. Inaccurate/Incomplete Information

Defendant contends that resentencing is required because the trial court relied on inaccurate and incomplete information and failed to take into account crucial mitigating factors at the time of sentencing. Defendant contends that counsel's failure to raise this issue during sentencing amounted to ineffective assistance of counsel.

Defendant argues that the trial court relied on inaccurate or incomplete information because it failed to conduct an assessment of his rehabilitative potential through intensive alcohol, drug, and psychiatric treatment.[1] However, MCR 6.425(A)(1)(e) only requires a probation officer to include in the PSIR "the defendant's medical history, substance abuse history, if any, and, if indicated, a current psychological or psychiatric report." Here, the PSIR stated that defendant reported that he had no issues with alcohol or illegal substances; it also stated that defendant reported that he had been diagnosed in 2012 with bipolar disorder, anxiety, and post-traumatic stress disorder and that he was taking medication for his conditions. While defendant cites *People v Triplett*, 407 Mich 510; 287 NW2d 165 (1980), to maintain that more is required, *Triplett* holds only that the PSIR must be "reasonably updated." *Id*. at 515. Defendant does not contend that the PSIR inaccurately reported any of these matters; nor did he claim error in the PSIR during sentencing. The trial court was not required to conduct a separate assessment of defendant's rehabilitative potential through treatment, and, accordingly, defendant has failed to show that the trial court relied on inaccurate or incomplete information.

Defendant also argues that the trial court failed to take into account mitigating factors such as his mental health history and his family support. This argument is also without merit. First, the presence or absence of mitigating factors was already taken into account by the trial court's scoring of the guidelines. See *People v Osby*, 291 Mich App 412, 416; 804 NW2d 903; *People v Nunez*, 242 Mich App 610, 617-618; 619 NW2d 550 (2000). Second, there is no indication that the trial court failed to consider defendant's alleged mitigating factors. On the contrary, the trial court heard, and disagreed with, defendants' stated mitigating factors such as the fact that the victim had issued a statement requesting leniency. The court also indicated it

---

[1] To the extent that defendant contends that the trial court should have sentenced him to a lower sentence, aside from his Sixth Amendment argument discussed below, defendant does not articulate any legal basis on which his sentence was improperly imposed.

had reviewed the PSIR. Therefore, the trial court was fully informed of the alleged "mitigating" factors that defendant identified below and claims now on appeal.

Because defendant has not identified a scoring error or shown that the trial court relied on inaccurate information in imposing sentence, he is not entitled to resentencing on these grounds. For the same reasons, counsel did not render ineffective assistance of counsel for failing to object to the length of defendant's sentence. *Ericksen*, 288 Mich App at 201.

### *iii. Sixth Amendment*

Defendant's Sixth Amendment challenge is governed by our Supreme Court's recent decision in *Lockridge*, ___Mich at ___. In *Lockridge*, our Supreme Court addressed whether, for purposes of *Alleyne*, "a judge's determination of the appropriate sentencing guidelines range . . . establishes a 'mandatory minimum sentence,' such that the facts used to score the offense variables must be admitted by the defendant or established beyond a reasonable doubt to the trier of fact. . . ." Slip op. at 5-6 n 11. The *Lockridge* Court answered this question in the affirmative, holding that the sentencing guidelines violated *Alleyne*. *Id*. at 1-2. Specifically, the guidelines were constitutionally deficient "[to] the extent to which the guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score [OVs] . . . that mandatorily increase the floor of the guidelines minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne*." *Id*.

To remedy the deficiency, the *Lockridge* Court made the sentencing guidelines' advisory only as opposed to mandatory and struck down the requirement in MCL 769.34(3) "that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure." *Id*. at 2. Henceforth, "a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence . . . [however] a guidelines minimum sentence range . . . is advisory only and . . . sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Id*. In other words, a sentencing court may engage in judicial fact finding to score the OVs—indeed it must continue to score the OVs[2]—but the recommended minimum sentencing range that such fact-finding produces is no longer mandatory, but rather is advisory only. In short, under *Lockridge*, a sentencing court now has discretion to consider the recommended minimum sentencing range and impose a sentence that it deems is reasonable and it need not articulate substantial and compelling reasons for departing from the guidelines' sentencing range. See slip op. at 29 (explaining "[b]ecause sentencing courts will hereafter not be *bound* by the applicable sentencing guidelines range, this remedy cures the Sixth Amendment flaw in our guidelines scheme by removing the unconstitutional constraint on the court's discretion.").

In this case, the jury did not find the facts to support the scoring of the OVs beyond a reasonable doubt as they were not part of the elements of CSC II and defendant did not admit

---

[2] The *Lockridge* Court explained, "Our holding today does nothing to undercut the requirement that the highest number of points *must be* assessed for all OVs, whether using judge-found facts or not." Slip op. at 29 n 28, citing MCL 777.21(1)(a) (emphasis in original).

these facts; therefore, the sentencing court engaged in judicial fact-finding to score the OVs. Accordingly, because those facts established the guidelines' minimum sentence, "an unconstitutional constraint [on the judge's discretion] actually impaired the defendant's Sixth Amendment right." *Lockridge*, ___Mich at___ (Slip op. at 32). The *Lockridge* Court explained the remedy for this type of situation as follows:

> We conclude that all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry. We reach this conclusion in part on the basis of our agreement with the following analysis from *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005):

> Some might suppose that the only choice for an appellate court in a case presenting a procedural error in imposing a sentence is between disregarding the error and requiring a new sentencing. However, the choice is not so limited. . . . Bearing in mind the several considerations outlined above that shape the context in which a disposition decision is to be made, we conclude that the 'further sentencing proceedings' generally appropriate for pre-*Booker/Fanfann* sentences pending on direct review will be a remand to the district court, not for the purpose of a required resentencing, but only *for the more limited purpose of permitting the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime, and if so, to resentence*. . . .

> A remand for determination of whether to resentence is appropriate in order to undertake a proper application of the plain error and harmless error doctrines. Without knowing whether a sentencing judge would have imposed a materially different sentence, . . . an appellate court will normally be unable to assess the significance of any error that might have been made. . . .

> Obviously, any of the errors in the procedure for selecting the original sentence discussed in this opinion would be harmless, and not prejudicial under plain error analysis, if the judge decides on remand, in full compliance with now applicable requirements, that under the post-*Booker/Fanfan* regime the sentence would have been essentially the same as originally imposed. Conversely, a district judge's decision that the original sentence would have differed in a nontrivial manner from that imposed will demonstrate that the error in imposing the original sentence was harmful and satisfies plain error analysis.

> *In short, a sentence imposed under a mistaken perception of the requirements of law will satisfy plain error analysis if the sentence imposed under a correct understanding would have been materially different.* [*Lockridge*, ___Mich at ___ (Slip op. at 33-34) (footnotes omitted).]

The *Lockridge* Court provided the following guidance for Michigan circuit courts on *Crosby* remands as follows:

Thus, in accordance with [*Crosby's*] analysis, in cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, *the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error*. If the trial court determines that the answer to that question is yes, the court shall order resentencing. [*Id*. at 34 (emphasis added).]

In this case, defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment—i.e. the judge made factual findings to score the OVs that formed the guidelines' mandatory minimum sentence. Accordingly, we remand this case to the trial court for a determination of whether the court would have imposed a materially different sentence had it been aware that the guidelines' recommended minimum sentencing range was advisory as opposed to mandatory. If the answer to this inquiry is yes, then the trial court must resentence defendant. If the answer to this inquiry is no, then defendant is not entitled to resentencing.

We affirm defendant's conviction and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell