# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONALD ERIC BREZZELL,

        Defendant-Appellant.

UNPUBLISHED
November 12, 2015

No.   322978
Oakland Circuit Court
LC No.   2013-248285-FC

Before:  JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Defendant was convicted in a jury trial of armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.   He was sentenced to 42 months to 20 years' imprisonment for the armed robbery conviction and two years' imprisonment for the felony-firearm conviction.   Defendant appeals by right.   We affirm.

In the early morning hours of August 26, 2013, Stephen White, a police officer with the Detroit Police Department, was sitting in his driveway at the Sutton Place Apartments in Southfield.   As White waited for his girlfriend to come outside, two men approached his 2013 Dodge Charger, and pointed guns in his face.   White testified that the men told him, " 'Run your s***, bro,' " which is a phrase White knew referred to a robbery.   When one of the men fired a shot at White, White fired back using his police gun.   White got out of the car and continued shooting as he backed into his garage.   Once inside, he called 911.   Police officers arrived at the scene and discovered the body of Deondre Collins, defendant's half-brother, near White's driveway.   The gun Collins had in his hand was loaded, but one round had been fired.   Officers arrested Brandon Smith near the apartment complex, and later found a 38-caliber revolver in the area where Smith was arrested.   Southfield Police Officer Michael Raby found a third weapon, a black and silver semi-automatic handgun, in a roadway inside the complex.   Officer Raby testified that the gun he found shoots plastic BBs.

Defendant first argues that the prosecution failed to present sufficient evidence that he aided and abetted the armed robbery because the evidence did not prove beyond a reasonable doubt that he knew that there was a plan to commit armed robbery at the time he drove to the apartment complex.   Further, defendant contends that the fact that he assisted one of the individuals after the robbery did not constitute aiding and abetting.   We disagree.

-1-

We review claims of insufficient evidence de novo. *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009). The evidence must be viewed in a light most favorable to the prosecution to "determine whether a rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt." *Id*. at 377-378. Viewing the evidence in a light most favorable to the prosecution, sufficient evidence existed for a reasonable jury to find that defendant knew the other individuals intended to commit armed robbery when defendant assisted by driving through the apartment complex and driving one of the individuals away from the complex.

In 2004, the Legislature revised the unarmed-robbery statute, MCL 750.530,[1] by codifying the transactional theory of robbery. *People v Smith-Anthony*, 494 Mich 669, 686; 837 NW2d 415 (2013). Under the statute, robbery includes acts that occur in an attempt to commit a larceny and in flight after the commission of a larceny. MCL 750.530(2). "[A] completed larceny is no longer necessary to sustain a conviction for the crime of robbery or armed robbery." *People v Williams*, 491 Mich 164, 166; 814 NW2d 270 (2012). The armed robbery statute, MCL 750.529,[2] proscribes the conduct described in MCL 750.530 when the person engaging in such conduct is in possession of a dangerous weapon or "an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon." Under the revised statute, the elements of armed robbery are:

---

[1] MCL 750.530 provides:

> (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

[2] MCL 750.529 provides:

> A person who engages in conduct proscribed under section 530 and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years. If an aggravated assault or serious injury is inflicted by any person while violating this section, the person shall be sentenced to a minimum term of imprisonment of not less than 2 years.

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7-8; 742 NW2d 610 (2007), citing CJI2d 18.1.]

One who does not directly commit an offense, but "procures, counsels, aids, or abets in its commission," may be punished as if he directly committed the offense. MCL 767.39; *People v Robinson*, 475 Mich 1, 5-6; 715 NW2d 44 (2006). Aiding and abetting is not a separate offense, but gives rise to vicarious liability for those who assist in the commission of a crime. *Robinson*, 475 Mich at 6. A defendant may be convicted of a crime under the theory of aiding and abetting if:

(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Plunkett*, 485 Mich 50, 61; 780 NW2d 280 (2010) (citations and quotation marks omitted).]

Presence alone, even with knowledge that an offense is being committed or is going to be committed, is not enough to establish aid or encouragement. *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999).

"Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014), citing *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). Further, "[a]n aider and abetter's knowledge of the principal's intent can be inferred from the facts and circumstances surrounding an event." *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010). "Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Carines*, 460 Mich at 758 (citation and quotation marks omitted).

Defendant testified regarding the events surrounding the robbery and regarding what he said during his interview with police. The prosecution played a recording of defendant's interview at trial, and the court admitted the recording into evidence. According to defendant, at approximately 12:30 a.m. on August 26, 2013, Collins called and asked defendant for a ride. Defendant owned a 1995 Buick Regal, and often gave Collins rides because defendant had a valid driver's license. Defendant testified that when he got home to pick up Collins, Collins was heavily intoxicated. Collins asked defendant to pick up a couple of his friends and drive them all to Sutton Place, but did not explain why he and his friends needed to go to the apartment complex. Defendant had been driving Collins to Sutton Place twice a week because Collins had

-3-

friends from school there. Defendant agreed to give Collins a ride, and picked up Smith and Marquis Byas, Collins's friends, along the way. The two got into the back seat of defendant's car and, according to defendant, seemed heavily intoxicated, as well.

Defendant testified that, as he drove into the apartment complex, he kept asking Collins, Smith, and Byas where to go, but they just told him to keep driving. When asked on cross-examination how long he drove around, defendant said that he was in the complex for approximately five to eight minutes. During his police interview, defendant told detectives that he drove through Sutton Place for 8 to 10 minutes before admitting that he actually drove for about 15 minutes. While driving, defendant heard someone mention the phrase "hittin' a lick." At trial, defendant said that, to him, the phrase means drinking liquor. However, defendant was also aware that the phrase referred to stealing. Defendant then heard one of the passengers talk about liking a specific car, and defendant assumed it was the Charger because that was the only car defendant saw running. During his police interview, defendant said that the car Collins, Smith, and Byas were going to hit was in the driveway, and that it was a 2013 Charger. When defendant had driven about two houses down from White's driveway, Collins told defendant to stop the car, and defendant did.

As soon as defendant stopped the car, the doors flew open. Defendant said that when Collins, Smith, and Byas got out of the car, he knew there was going to be trouble. He saw Smith with a black gun, saw Collins with a gun, and heard Byas complain about having a toy gun. Defendant also told detectives during his police interview that Smith had a black 38-caliber revolver, Collins had the same type of gun, but chrome, and Byas had a plastic gun. At trial, defendant testified that he did not know Collins, Smith, and Byas had guns until they were getting out of the car. However, during his police interview, defendant told detectives that the plastic gun was already in the back seat of his car. In addition, defendant nodded yes when asked by detectives if he heard Smith say he had a black gun while he was driving.

Defendant said he drove away because he did not want to be involved,[3] but could see what was happening in his rearview mirror. Collins, Smith, and Byas stood in the middle of the street, and then suddenly took off towards a long driveway. Not more than a minute later, defendant heard gunshots and saw flashes. Defendant then saw Smith and Byas running, but did not see Collins. Defendant got out of his car and started walking towards where he had last seen Collins. Defense counsel asked defendant on direct examination if he stopped the car because he was going to be the getaway driver, and defendant said, "No, sir, not at all." When asked on cross-examination if, after he heard shots and saw Smith and Byas running, he knew they had attempted to get White's car, defendant said, "Yes, from that point."

Before defendant could get to Collins, defendant was stopped by a police officer. Defendant told the officer he was there to see a friend because he assumed that if he told the truth, the officer would link him to the crime. Defendant was placed in the back of a police car,

---

[3] During his police interview, defendant said that he was going to leave because Smith, Collins, and Byas were going to hit this lick and get the car.

and officers brought White to defendant's location. When White said defendant was not one of the men who approached him, the police told defendant to leave.

Defendant testified that when he returned to his car, Byas was sitting inside. Byas told defendant that Collins had started the shooting, but did not tell defendant what happened to Collins[4]. Byas then demanded that defendant take him somewhere. Defendant testified that he told Byas to get out of the car, but did what Byas said because he was not sure if Byas had a gun. Byas did not threaten defendant at any time, though. Defendant knew at this point that Byas, Smith, and Collins had tried to commit a crime. Defendant dropped Byas off, and then drove home. Defendant said that about 30 to 45 minutes later, police came to the house and took him into custody. By this time, defendant knew Collins had died.

At trial, defendant admitted that, during his interview, he lied and told police he drove a Ford Focus, and then a "Jimmie." Defendant also admitted that he lied to police by claiming he came home after dropping Collins off at the apartment complex.

Detective Daryl Palmer, one of the detectives that interviewed defendant, testified that defendant was able to articulate where Collins, Smith, and Byas each stood as they approached White's car. Detective Palmer admitted that, during the interview, he told defendant that if he were defendant, he would rather be in the witness column than the defendant column, because Smith might be charged with first-degree murder, and that is life in prison. The recording also shows that Detective Palmer used the words "hit a lick" before they were used by defendant.

Because it was late at night and defendant drove through the complex for several minutes while the passengers in the car discussed "hitting a lick," a reasonable jury could infer that defendant understood Collins, Smith, and Byas did not intend to go to Sutton Place to meet up with friends, but intended to commit robbery, instead. It would be reasonable to infer that defendant knew that Byas, Collins, and Smith had guns before they got out of his car because of defendant's detailed descriptions of the guns and his statement during his police interview that the toy gun was already in the back seat of the car. Also, the fact that defendant remained close enough to see portions of the robbery could lead a reasonable jury to believe that defendant intended to serve as the getaway driver. In addition, defendant lied to police, both when he was stopped by Officer Raby and during his interview, and fled the apartment complex after the crime. These facts indicate that defendant attempted to conceal his involvement in the armed robbery. See *Henderson*, 306 Mich App at 9; *Bennett*, 290 Mich App at 474.

Defendant testified that it was not until Collins, Smith, and Byas got out of his car that he knew there was going to be trouble. Defendant testified that the reason he stopped the car was not because he was going to be the getaway driver. He also testified that he did not realize Collins, Smith, and Byas had guns until they were already out of his car. Despite defendant's testimony, we will not interfere with the jury's determinations regarding the weight of the evidence or credibility of witnesses. *People v McKinney*, 258 Mich App 157, 165; 670 NW2d

---

[4] However, during his police interview, defendant stated that Byas called him while Byas was running away and informed him, "That was Dre shooting."

-5-

254 (2003). Further, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Moreover, even if defendant did not know that Collins, Smith, and Byas intended to commit armed robbery as he drove through the apartment complex, sufficient evidence existed that defendant knew the crime had been committed when he drove Byas away from the complex. During his police interview, defendant drew a picture of the area around White's driveway, and pointed out where Byas, Smith, and Collins were standing as they approached the Charger. When asked on cross-examination if, after he heard shots and saw Smith and Byas running, he knew they had attempted to get White's car, defendant said, "Yes, from that point." Defendant still drove Byas to Nine Mile or Ten Mile Road and Beech. Under the transactional theory of robbery, then, defendant gained the requisite knowledge of an aider and abettor during the commission of an ongoing robbery, and assisted Byas while Byas was still in the course of fleeing from the attempted larceny.[5] See *Bennett*, 290 Mich App at 474; *Chambers*, 277 Mich App at 7-8. For the reasons discussed above, there was sufficient evidence to convict defendant of

Defendant next argues he was denied the effective assistance of counsel when his attorney failed to request a jury instruction on accessory after the fact. We disagree.

Generally, to preserve a claim of ineffective assistance of counsel, a defendant must file a motion for a new trial or a *Ginther*[6] hearing in the trial court to establish evidence supporting the claim. *People v Sabin* (*On Second Remand*), 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Defendant did not raise this issue in a motion for a new trial or a *Ginther* hearing. Therefore, the issue is not preserved.

Claims of ineffective assistance of counsel are mixed questions of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews a trial court's findings of fact for clear error, and reviews constitutional questions de novo. *Id*. The defendant must establish a factual predicate for the ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Because defendant did not seek a new trial or *Ginther* hearing, this Court's review is limited to the appellate record. *Sabin (On Second Remand)*, 242 Mich App at 658-659.

Defendant was not denied the effective assistance of counsel when his attorney failed to request a jury instruction on accessory after the fact. To evaluate a claim of ineffective assistance of counsel, this Court uses the standard established in *Strickland v Washington*, 466

---

[5] This Court has found that serving as a getaway driver may support a robbery conviction under the theory of aiding and abetting. See *Norris*, 236 Mich App at 421; *People v Martin*, 150 Mich App 630, 634-635; 389 NW2d 713 (1986). See also *People v Smielewski*, 235 Mich App 196, 207; 596 NW2d 636 (1999) (concluding that a rational trier of fact could reasonably find that the defendant acted as a principal or as an aider and abettor in the robbery as a getaway driver).

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *Hoag*, 460 Mich at 5-6, citing *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). For a successful claim of ineffective assistance of counsel, the defendant must show: (1) that counsel's performance was deficient such that it "fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The effective assistance of counsel is presumed. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014).

The common-law crime of accessory after the fact is similar to that of obstruction of justice. *People v Perry*, 460 Mich 55, 62; 594 NW2d 477 (1999). Unlike aiding and abetting, accessory after the fact is a substantive offense which may be charged under MCL 750.505. MCL 750.505 provides:

> Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court.

Accessory after the fact must be charged separately. See *Perry*, 460 Mich at 64 n 21, citing *People v Karst*, 118 Mich App 34, 41; 324 NW2d 526 (1982). Defendant was charged with armed robbery and felony-firearm. Defendant was not charged with accessory after the fact.

In general, a court must instruct the jury regarding law applicable to the case. MCL 768.29.[7] This includes "all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *Henderson*, 306 Mich App at 4, quoting *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005).

Under MCL 768.32(1),[8] a jury may find a defendant not guilty of the charged offense, but " 'guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to

---

[7] MCL 768.29 provides:

> It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved. The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require. The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused.

commit that offense.' " *People v Jones*, 497 Mich 155, 162-163; 860 NW2d 112 (2014), quoting MCL 768.32(1). In *Cornell*, "this Court concluded that a defendant is entitled to a lesser offense instruction only if that lesser offense is necessarily included in the greater offense; that is, the offense must be committed as part of the greater offense insofar as it would be 'impossible to commit the greater offense without first committing the lesser offense.' " *Id*. at 164, quoting *Cornell*, 466 Mich at 361. In other words, "[n]ecessarily included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense." *People v Nickens*, 470 Mich 622, 626; 685 NW2d 657 (2004) (citation and quotation marks omitted). Cognate lesser offenses may not be considered. *Jones*, 497 Mich at 164, citing *Cornell*, 466 Mich at 353-355.

Accessory after the fact cannot be considered a necessarily included lesser offense of armed robbery or felony-firearm. As stated above, the elements of armed robbery are:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*Chambers*, 277 Mich App at 7-8, citing CJI2d 18.1.]

Felony-firearm requires " 'that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.' " *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011), quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). An accessory after the fact is a person " 'who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment.' " *Perry*, 460 Mich at 62, quoting Perkins, Criminal Law (2d ed), p 667, quoted in *People v Lucas*, 402 Mich 302, 304; 262 NW2d 662 (1978). Reviewing the elements of each offense, it would be possible to commit both armed robbery and felony-firearm without first committing accessory after the fact. Therefore, the court could not have permitted a jury instruction regarding accessory after the fact, and defense

---

[8] MCL 768.32(1) provides:

> Except as provided in subsection (2), upon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.

counsel was not ineffective for failing to request such an instruction since defense counsel need not make a meritless argument. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (explaining that the defense counsel need not make a meritless request).

Affirmed.


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan