*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

CLARENCE STREET,

        Defendant-Appellee.

UNPUBLISHED
November 30, 2023

No. 363410
Ingham Circuit Court
LC No. 19-000567-FC

Before: HOOD, P.J., and JANSEN and FEENEY, JJ.

PER CURIAM.

The prosecution appeals by right the trial court's order granting defendant's motion for a directed verdict of acquittal following a jury verdict of guilty of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (multiple variables[1]), provisionally granting defendant a new trial, and conditionally ordering an evidentiary hearing to further address possible juror misconduct. We reverse the trial court's order and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the 2018 sexual assault of the victim, defendant's former girlfriend. Defendant and the victim testified that they began dating in 2014 but that they broke up near the end of 2015. Despite their breakup, the victim and defendant continued to visit one another on occasion between 2015 and 2018. They maintained a sexual relationship after their breakup, and they ordinarily engaged in vaginal and oral sex when they met.

The victim testified that, in March 2018, she and defendant agreed to spend the night together in a hotel room that she had booked. After checking into the hotel room at approximately

---

[1] The prosecution presented alternative theories: coerced or forced sexual penetration causing personal injury to the victim, MCL 750.520b(1)(f), and sexual penetration causing personal injury to the victim while the victim was mentally or physically incapacitated, MCL 750.520b(1)(g).

9:00 or 10:00 p.m., defendant made himself and the victim drinks while the victim showered. The victim took a sip of her drink that defendant had made for her after she had gotten out of the shower, but it "didn't taste right," so she set it down and refused to drink it. The victim and defendant subsequently went to the balcony and smoked marijuana for approximately 30 minutes. After they returned to the room, the victim kissed defendant while he sat on the edge of the bed. They watched a movie and kissed again on the bed, but the victim became very tired, so she rolled to her side so that she could go to sleep. When the victim did so, defendant lay behind her and began to rub his penis on her vagina. Both the victim and defendant were fully clothed. The victim told defendant "no," to which defendant responded that he "just wanted to feel it." The victim again told defendant "no" and that she "didn't want to" have sex, and defendant stopped what he was doing. The victim stated that she fell asleep shortly thereafter, and the last thing that she remembered prior to falling asleep was telling defendant that she did not want to have sex.

The victim testified that she woke up a few hours later to find that defendant had inserted his penis into her anus. The victim's shorts and underwear had been removed, and her tank top had been pulled up. The victim felt pain in her anus and became scared by what defendant had done, so she ran to the bathroom, shut the door, and began crying as she sat against the door. The victim could hear defendant stating through the door that he was "sorry" and that he had "put it in the wrong hole." The victim demanded that they leave the hotel, to which defendant agreed. They put their clothing on and packed their belongings, and defendant drove the victim back to her car that was parked at his mother's house so that she could drive herself home. The victim sought medical treatment the following day because she was experiencing abdominal, pelvic, and rectum pain following the assault. The victim participated in a sexual assault examination during which several samples were collected from her body. An expert in forensic DNA analysis testified that although the perianal and breast swabs did not reveal the presence of DNA, the vaginal and vulvar swabs both indicated the possible presence of male DNA. Further analysis of the vaginal swab indicated that defendant's DNA had been present in the victim's vagina.

Defendant testified on his own behalf, and his testimony largely addressed the issues of consent and mistake. Defendant stated that he performed oral sex on the victim for approximately 25 minutes and that when the victim refused to perform oral sex on him when he told her to, he lay on top of her and inserted his penis into her vagina. Defendant stated that he removed his penis from the victim's vagina approximately a minute and a half later and put his shorts back on because he believed that she was upset that he had stopped performing oral sex on her. Defendant watched television for a few hours while the victim lay next to him on the bed. During that time, the victim had moved closer to defendant so that her buttocks were pressed against him. Defendant stated that, during their relationship, the victim had indicated on various occasions that she wanted to have sex with him by pressing her buttocks against his penis while they were in bed, so defendant interpreted the victim's actions as a sign that she wanted to engage in sex with him. Defendant subsequently removed his shorts, lifted the victim's leg, and attempted to engage in vaginal sex with her. However, defendant stated that he could not see the victim's vagina, so he mistakenly penetrated her anus instead. Defendant testified that nothing led him to believe that the victim was unconscious, asleep, or an unwilling participant at any point that night. But, defendant did admit that he never checked to see if the victim was sleeping. Moreover, defendant admitted that he sent text messages to the victim the following day and admitted that he knew that the victim was sleeping. Specifically, when the victim messaged defendant that she could not "remember anything but waking up in pain," defendant stated, "I gave you some head and started to have sex

with you, but you wouldn't wake up so I stopped and had a [cigarette] and you moved around like you were awake, so I tried again and that's when you woke up I guess." Defendant also later messaged the victim, "Oh, I tried so hard to wake you up."

After the prosecution rested its case, defendant moved for a directed verdict of acquittal based on the evidence presented. The trial court denied defendant's motion because it found that the prosecution had presented sufficient evidence for a rational jury to find beyond a reasonable doubt that defendant was guilty as charged. The trial court stated that the case hinged on the credibility of the witnesses and that it was the jury's role to decide the facts of the case and make credibility determinations. The jury found defendant guilty of one count of CSC-I for anally penetrating the victim, but it acquitted him of CSC-I for vaginally penetrating the victim. On defendant's request, the trial court polled the jury, and each juror indicated that the announced verdicts reflected his or her individual decision as well as the collective decision of all of the jurors.

After the jury rendered its verdicts, defendant filed a renewed motion for a directed verdict or, alternatively, a new trial, arguing that the evidence presented was insufficient for a rational jury to find beyond a reasonable doubt that he was guilty of CSC-I for anally penetrating the victim and that the jury rendered inconsistent verdicts because it misunderstood and misapplied the law. The prosecution filed a response, arguing that the evidence presented was sufficient. The prosecution also argued that the jury appropriately considered each count individually as it was instructed to do, and the fact that the jury found defendant guilty of one count and not guilty of the other count does not indicate that the jury rendered inconsistent verdicts because it misunderstood and misapplied the law. A motion hearing was held, and the parties largely relied on their written submissions. After hearing oral arguments, the trial court indicated that it intended to issue a written order regarding defendant's motion so that it could review the transcripts and relevant caselaw prior to issuing a decision. At the end of the motion hearing, however, the trial court also expressed concern regarding possible juror misconduct. The trial court stated:

> One of the things that is not on this record, but . . . there was an attorney who was on the panel, and one of the jurors said, well, the attorney really led us to where— to our decision, something along those lines. And I don't know what that discussion was . . . , but I had this impression that they all relied on the attorney because he was an attorney. That's unfair, and that has troubled me since we heard that.
>
> I don't know if the jury made an independent decision, even though we polled the jury, because of what we were told in the back, that he really led the group, that they relied on him for information, and I don't know how much explanation he gave them that was outside the evidence that was actually presented by both sides in this case. That to me is as troubling as both of your arguments. So I wanted to just make a record of that.

The trial court thereafter issued a written order in which it granted defendant's motion for a directed verdict, provisionally granted defendant a new trial if its decision regarding the directed verdict were reversed, and conditionally granted an evidentiary hearing on remand to further address the possible juror misconduct if both its decision regarding the directed verdict and its decision regarding the new trial were reversed. With regard to the directed verdict, the court did not specifically address defendant's arguments that the jury rendered inconsistent verdicts because

it misunderstood and misapplied the law. The court found that no rational jury could find that the essential elements of CSC-I were proven beyond a reasonable doubt. The court found that there was no dispute regarding the first two elements because defendant had admitted at trial that he had penetrated the victim's anus with his penis and the victim testified that she experienced pain when defendant penetrated her anus and sought medical treatment for the pain the following day.

The trial court also found that the prosecution had presented insufficient evidence to prove beyond a reasonable doubt that defendant used force or coercion to anally penetrate the victim or that defendant knew or had reason to know that the victim was physically helpless at the time that he anally penetrated her. The court reasoned that the victim had impliedly consented to penetration because she and defendant had established a pattern of waking each another up for sex in a similar fashion during their dating relationship. The court further reasoned that defendant had "immediately stopped all sexual behavior" after he inserted his penis into the victim's anus because the victim had "expressed that she did not want to have sex." The court also heavily emphasized that there was "conflicting testimony" from the victim and defendant regarding whether the victim "was even asleep at the time of the sexual activity," and it stated that the victim's testimony that she voluntarily took "a cocktail of medications and drugs" on the night of the assault raised "serious questions about the accuracy of her testimony." The court relied on the same reasoning for its decision to provisionally grant defendant a new trial.

The trial court also addressed the necessity of an evidentiary hearing on the issue of possible juror misconduct. The trial judge indicated that she had personally spoken to the jurors after the trial had concluded and that her desire to hold an evidentiary hearing was based on what the jurors had expressed to her regarding the verdicts. Specifically, the trial judge indicated that several jurors expressed to her that "they did not want to convict [d]efendant because they did not consider him morally culpable," but they "felt compelled to convict because of the way the law was written." Additionally, an attorney sat as a juror at trial, and several of the jurors expressed to the trial judge "how helpful it was to have an attorney on the jury who was able to explain the legal concepts and issues." The trial judge also indicated that she witnessed a juror leave the jury room and seemingly apologize to defendant in the hallway for the verdict. This appeal followed.

## II. DIRECTED VERDICT

The prosecution argues on appeal that the trial court erred by granting defendant's motion for a directed verdict of acquittal because it presented sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant was guilty of CSC-I for anally penetrating the victim; the jury's inconsistent verdicts were permissible; and the jury did not misinterpret and misapply the law. We agree.

## A. SUFFICIENT EVIDENCE

The standards for evaluating evidence in relation to a directed verdict of acquittal are the same as the standards used to evaluate the sufficiency of the evidence. *People v Powell*, 278 Mich App 318, 320 n 1; 750 NW2d 607 (2008). Accordingly, we review de novo a trial court's decision to grant or deny a directed verdict of acquittal, and we review "the evidence presented by the prosecution in the light most favorable to the prosecution, up to the time the motion is made," to determine if the evidence "is insufficient to justify a reasonable trier of fact to find guilt beyond a

reasonable doubt." *People v Lemmon*, 456 Mich 625, 634; 576 NW2d 129 (1998). Due process demands a directed verdict when there is insufficient evidence for a rational trier of fact to find guilt beyond a reasonable doubt. *Id*. at 633-634. While the prosecution need not disprove or negate every theory that is consistent with innocence, it "is obligated to prove its own theory beyond a reasonable doubt, in the face of whatever contradictory evidence the defendant may provide." *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009). "Circumstantial evidence and reasonable inferences arising therefrom can constitute satisfactory proof of the elements of a crime." *People v Reddick*, 187 Mich App 547, 551; 468 NW2d 278 (1991). A reviewing court is "required to draw all reasonable inferences and make credibility choices in support of the jury verdict," *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000), and it "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses," *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Contradictory witness testimony does not warrant reversal of a criminal conviction because "[i]t is the province of the jury to determine questions of fact and assess the credibility of witnesses[.]" *People v Odom*, 276 Mich App 407, 419; 740 NW2d 557 (2007).

An individual is guilty of CSC-I, relevant to this case, if he or she uses force or coercion or "knows or has reason to know that the victim is . . . physically helpless" when he or she sexually penetrates the victim, and the victim suffers a personal injury as a result. See MCL 750.520b(1)(f); MCL 750.520b(1)(g). "Force or coercion includes," in relevant part, but is not limited to, circumstances in which an individual "overcomes the victim through the actual application of physical force or physical violence" or, "through concealment or by the element of surprise, is able to overcome the victim." MCL 750.520b(1)(f)(*i*), (f)(*v*). A person is physically helpless when he or she "is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." MCL 750.520a(m). " 'Personal injury' means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." MCL 750.520a(n).

As the trial court noted in its order, it is undisputed that the prosecution presented sufficient evidence to prove that defendant sexually penetrated the victim's anus with his penis. The victim testified that she woke up to find defendant penetrating her anus with his penis, and defendant admitted to doing so. It is also undisputed that the prosecution presented sufficient evidence to prove that the victim suffered personal injury as a result. The victim testified that it was "painful" when defendant penetrated her anus with his penis and that she sought medical treatment the following day because she continued to have abdominal, pelvic, and rectum pain. The nurse who conducted the victim's sexual assault examination testified that she discovered "a laceration" and some "redness" on the victim's anus and "anal opening."

Contrary to the trial court's finding, we believe that, when viewing the evidence in a light most favorable to the prosecution, the evidence presented was sufficient to prove beyond a reasonable doubt either that defendant used force or coercion or that knew or had reason to know that the victim was physically helpless. The victim testified that she explicitly told defendant "no" at least twice and that she did not want to have sex when he started to rub his penis on her vagina, and the last thing that she remembered prior to falling asleep was telling defendant that she did not want to have sex. Shortly after the victim fell asleep, she was awoken by defendant penetrating her anus with his penis. The victim testified that she was fully clothed when she fell asleep but that when she was woken up by defendant, her tank top had been pulled up and her shorts and

underwear had been removed. The nurse who completed the sexual assault examination testified that the victim had reported that her clothing had been removed after she had fallen asleep and that her shorts were missing. Defendant testified that he never checked to see if the victim was sleeping prior to initiating sexual activities. Defendant also admitted in text messages to the victim that he "started to have sex with" her but that she "wouldn't wake up," that he tried to have sex with her again when she moved around in the bed, that she subsequently "woke up" when he "tried again," and that he "tried so hard to wake [her] up." Given the evidence presented, the jury could have reasonably inferred that defendant used force or coercion or, in the alternative, that the victim was physically helpless, see *Reddick*, 187 Mich App at 551, and how the jury weighed the evidence is something that this Court will not interfere with, *Kanaan*, 278 Mich App at 619.

In granting defendant's motion for a directed verdict, the trial court principally relied on its finding that the victim's testimony was not credible. However, "it is not permissible for a trial court to determine the credibility of witnesses in deciding a motion for a directed verdict of acquittal, no matter how inconsistent or vague that testimony might be." *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). The victim's testimony alone, if believed by the jury, was sufficient to prove all three elements of CSC-I. See MCL 750.520h. By disregarding the victim's testimony as "unbelievable," the trial court "failed altogether to rule on the sufficiency of the prosecution's proofs." *Mehall*, 454 Mich at 6-7. Given the jury's guilty verdict, it is clear that the jury found the victim to be more credible than defendant with respect to that charge, and the trial court was in no position to replace the jury's credibility findings with its own. See *Nowack*, 462 Mich at 400. Because the prosecution presented sufficient evidence for a rational jury to find beyond a reasonable doubt that defendant was guilty of CSC-I for anally penetrating the victim, we conclude that the trial court erred by granting defendant's motion for a directed verdict of acquittal.

B. INCONSISTENT VERDICTS

Though the trial court did not substantively address the issue in its order, we address as preserved the prosecution's argument on appeal regarding inconsistent verdicts because the parties raised in the lower court the issue of whether the jury's inconsistent verdicts warranted a directed verdict or new trial. See *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). We review de novo the constitutional question of whether a jury rendered inconsistent verdicts. *People v Russell*, 297 Mich App 707, 722; 825 NW2d 623 (2012).

"Verdicts are considered 'inconsistent' when the verdicts 'cannot rationally be reconciled.' " *People v Montague*, 338 Mich App 29, 51; 979 NW2d 406 (2021) (citation omitted). "[I]nconsistent verdicts within a single jury trial are permissible," and they do not require reversal absent a showing of confusion, a misunderstanding of the trial court's instructions on the law, or "an impermissible compromise" by the jury. *People v Putman*, 309 Mich App 240, 251; 870 NW2d 593 (2015). "The defendant may not merely rely on the alleged inconsistency itself to support such an argument." *Montague*, 338 Mich App at 51. "[J]uries are not held to any rules of logic nor are they required to explain their decisions." *Putman*, 309 Mich App at 251 (quotation marks and citation omitted). Because "[t]he deliberative process of the jury is secret, and no court is privy to the rationale leading to inconsistent verdicts," a reviewing court "may not interfere with their judgments." *People v Davis*, 320 Mich App 484, 491; 905 NW2d 482 (2017), vacated in part on other grounds 503 Mich 984, 986 (2019).

Defendant was not entitled to relief pursuant to this argument because juries may reach inconsistent verdicts in a single jury trial, and defendant did nothing more than rely on the inconsistency itself to support his argument in the lower court. See *Montague*, 338 Mich App at 51; *Putman*, 309 Mich App at 251. Moreover, it is clear from the record that the jury reached different conclusions with regard to the third element of CSC-I for count one and count two, and it is well recognized that "it is possible for a jury to reach separate conclusions on an identical element of two different offenses," *People v Garcia*, 448 Mich 442, 464; 531 NW2d 683 (1995). As previously discussed, the deciding factor in this case was ultimately the credibility of the witnesses, particularly the victim and defendant. "[A] jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). The jury in this case was therefore free to believe the victim's testimony in part as well as defendant's testimony in part when rendering its verdict for each count. See *id*. It is the province of the jury to determine witness credibility, and a reviewing court may not interfere with those determinations. See *Odom*, 276 Mich App at 419. Because defendant failed to satisfy his burden under the proper standard, he was not entitled to reversal of his conviction on these grounds. See *Putman*, 309 Mich App at 251. Accordingly, the trial court, when reviewing the jury's verdicts for the purpose of addressing defendant's motion for a directed verdict, was not permitted to interfere with the jury's judgments as it did. See *Davis*, 320 Mich App at 491.

## III. NEW TRIAL

The prosecution also argues that the trial court abused its discretion by provisionally granting defendant a new trial on the same grounds on which it granted defendant's motion for a directed verdict of acquittal. We agree.

"If the court grants a directed verdict of acquittal after the jury has returned a guilty verdict, it must also conditionally rule on any motion for a new trial by determining whether it would grant the motion if the directed verdict of acquittal is vacated or reversed." MCR 6.419(E). Additionally, the reviewing court "must state orally on the record or in a written ruling made a part of the record its reasons for granting or denying a motion for a directed verdict of acquittal and for conditionally granting or denying a motion for a new trial." MCR 6.419(F). "This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial. An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *People v Powell*, 303 Mich App 271, 276-277; 842 NW2d 538 (2013) (quotation marks and citation omitted). "Underlying questions of law are reviewed de novo, while a trial court's factual findings are review for clear error[.]" *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (quotation marks and citation omitted; alteration in original).

"A trial court may grant a motion for a new trial based on the great weight of the evidence only if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). "[A]bsent exceptional circumstances, issues of witness credibility are for the jury," and, "despite any misgivings or inclinations to disagree," the trial court must leave such determinations with the jury when it hinges on "diametrically opposed versions of the events in question." *Lemmon*, 456 Mich at 642-644 (quotation marks and citation omitted). Such exceptional circumstances include when the testimony "contradicts indisputable physical facts or laws," "is patently incredible or defies physical realities," "is material and is so inherently implausible that

it could not be believed by a reasonable juror," or "has been seriously impeached and the case [is] marked by uncertainties and discrepancies." *Lemmon*, 456 Mich at 643-644 (quotation marks and citations omitted). "Conflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial." *Unger*, 278 Mich App at 232. "The hurdle that a judge must clear in order to overrule a jury and grant a new trial is unquestionably among the highest in our law." *Id*. at 232 (quotation marks and citation omitted).

We conclude that the trial court abused its discretion by provisionally granting defendant a new trial on the same grounds on which it granted defendant's motion for a directed verdict. As previously discussed, the trial court improperly made witness credibility determinations contrary to the jury's findings. See *Nowack*, 462 Mich at 400; *Kanaan*, 278 Mich App at 619. Similar to a directed verdict of acquittal, "[c]onflicting testimony and questions of witness credibility" are insufficient grounds for granting a defendant a new trial. *Unger*, 278 Mich App at 232. Because witness credibility hinged on "diametrically opposed versions of the events in question," the trial court in this case was obligated to "leave the test of credibility" with the jury. *Lemmon*, 456 Mich at 646-647. As the Michigan Supreme Court said in *Lemmon,* 456 Mich at 627, a "trial judge does not sit as the thirteenth juror in ruling on motions for a new trial and may grant a new trial only if the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." Here, nothing in the record suggests that any "exceptional circumstances" existed that so seriously undermined the victim's credibility "that it would be a manifest injustice to allow the guilty verdict to stand," and the trial court pointed to none in its order. See *Lemmon*, 456 Mich at 642-644 (quotation marks and citations omitted). And, as previously discussed, the jury was well within its rights to believe both the victim's and defendant's testimony only in part. See *Perry*, 460 Mich at 63. Because the trial court did not express an appropriate basis for its determination, its decision provisionally granting defendant a new trial was outside the range of principled decisions. See *Powell*, 303 Mich App at 277.

## IV.  REASSIGNMENT ON REMAND

Lastly, the prosecution does not challenge the trial court's decision to order an evidentiary hearing on remand. But, the prosecution does request that this case be remanded to a different trial judge to preserve the appearance of justice. We agree.

A party is ordinarily not obligated to specifically preserve an objection to an issue raised, addressed, or decided sua sponte by a court. See MCR 2.517(A)(7); *People v Anderson*, 341 Mich App 272, 276; 989 NW2d 832 (2022). Moreover, disqualification of a trial court judge may be considered on appeal absent a motion in the trial court when the basis for disqualification was unknown or not readily apparent to the parties. See *People v Cocuzza*, 413 Mich 78, 81; 318 NW2d 465 (1982). The trial court sua sponte raised the issue of possible juror misconduct and its intention to hold an evidentiary hearing at the motion hearing, and the basis for disqualification was not apparent to the parties until the trial judge stated at the motion hearing that she had learned of possible juror misconduct after speaking with the jurors at the conclusion of the trial. Accordingly, this issue is preserved.

In determining whether to remand the case to a different judge, this Court considers

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*In re Foster Attorney Fees*, 317 Mich App 372, 379; 894 NW2d 718 (2016) (quotation marks and citations omitted).]

We conclude that remand to a different trial judge should occur in this case. Disqualification of a judge is warranted when he or she "has personal knowledge of disputed evidentiary facts" relevant to the proceeding, MCR 2.003(C)(1)(c), and when he or she is "likely to be a material witness in the proceeding," MCR 2.003(C)(1)(g)(*iv*). At the motion hearing, the trial judge detailed several statements that jurors had made to her after trial. The trial judge again mentioned statements that jurors had made to her after trial in her written order, and she further detailed a situation that she had personally observed in which a juror left the jury room and seemingly apologized to defendant in the hallway for the verdict. And, as previously discussed, all of the trial judge's findings were contrary to the jury's findings of fact and its verdicts, the trial judge erred by granting defendant's motion for a directed verdict of acquittal, and the trial judge abused her discretion by provisionally granting defendant a new trial. Based on the trial judge's statements at the motion hearing and in her order, we conclude that "the original judge would . . . have substantial difficulty in putting out of . . . her mind previously expressed views or findings determined to be erroneous," and "reassignment is advisable to preserve the appearance of justice." *Foster Attorney Fees*, 317 Mich App at 379 (quotation marks and citation omitted).

Reversed and remanded for proceedings consistent with this opinion before a different trial judge. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kathleen A. Feeney